## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**STEVEN JAY SENCIAL**                                              **CIVIL ACTION**

**VERSUS**                                                                    **NO. 23-3351**

**JEFFERSON PARISH SHERIFF**                              **SECTION "A"(4)**
**JOSEPH LOPINTO, III, ET AL.**


### PARTIAL REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2) and § 1915A**, and **42 U.S.C. § 1997e(c)(1) and (2)** as applicable. Upon review of the record, the Court finds this matter can be disposed of without further proceedings.

### I.    Factual and Procedural Background

Plaintiff Stephen Jay Sencial ("Sencial") was a pretrial detainee housed in the Jefferson Parish Correctional Center ("JPCC") when he filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983.[1] Sencial named as defendants Jefferson Parish Sheriff Joseph Lopinto III, in his individual and official capacities, CorrectHealth Jefferson, LLC ("CorrectHealth"), and Deputy Jody Lee Banks, Deputy L. Preatto, Dr. Juanita Alexander-Sallier, Dr. Phillip W. Nowlin, Clara McKinley, LPN, Dr. Lumbar, Sgt. Steven Rabb, and Deputy Kevin Smith, each in an individual capacity, challenging the length and conditions of his confinement, the alleged use of excessive force, and the adequacy of the medical care received at JPCC.[2]

---

[1] ECF No. 1, ¶I(A), at 2; *id.*, ¶III, at 4.

[2] *Id.*, ¶I(B), at 2; *id.*, ¶III, at 4. Sencial has since moved to voluntarily dismiss defendants Smith and Rabb. *See* ECF No. 15. That dismissal is addressed in the record by separate order. *See* ECF No. 16.

To facilitate the Court's review and clarify a number of the allegations made against the defendants, the Court issued a response order requiring Sencial to provide copies of all grievance complaints submitted by him and responses thereto in connection with the specific claims asserted in his complaint.[3] *Spears v. McCotter*, 766 F.2d 179, 181 (5th Cir. 1985) (courts may use questionnaires and prison records to clarify the factual and legal basis of a prisoner's claims and the responses are treated "in the nature of a motion for more definite statement" under Fed. R. Civ. P. 12(e)) (citing *Watson v. Ault*, 525 F.2d 886, 892 (5th Cir. 1976)). Sencial responded to the Order by providing over 380 pages of administrative grievance forms, responses, medical care requests, and other medical records that he attributes to his distinct claims in this case.[4] *Id.* (a prisoner's answers to the Court's questionnaire are considered an elaboration on the allegations in the complaint, not a separate pleading) (citing *Watson*, 525 F.2d at 882).

The Court initially questioned whether Sencial had actively sought administrative review of all of his many claims. Having received the abundance of documents, it is clear at this stage that he at least attempted if not successively sought review of his claims at each available stage, with many of his grievance complaints dismissed or rejected as duplicitous, leaving him no further avenue of review at the jail on those matters. *Accord Favela v. Collier*, No. 22-40415, 2024 WL 350361, at *2-*3 (5th Cir. 2024) (on summary judgment, prisoner should at least be allowed to raise factual support on the issue of exhaustion).

On this limited record, the Court will not address, *and does not by any means waive*, administrative exhaustion, which is a defense best left to be raised by the parties if appropriate on summary judgment. *See Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012) (a federal district

---

[3] ECF No. 11.

[4] ECF No. 12.

court has no discretion to waive the PLRA's exhaustion requirement); *Coleman v. Terrebonne Par. Crim. Just. Complex*, No. 13-4325, 2013 WL 6004051, at *2 (E.D. La. Nov. 13, 2013) ("[I]t is easy work to establish that dismissal is appropriate pursuant § 1997e(a) in the context of a properly supported motion for summary judgment under Rule 56 . . ."); *Abbott v. Babin*, 587 F. App'x 116, 118 (5th Cir. 2014) ("When defendants seek to avail themselves of the affirmative defense of failure to exhaust, they bear the burden of showing that administrative remedies were not exhausted.").  Sencial's claims are outlined below.

### A.    General Jail Conditions Following May 23, 2022, Arrest

Sencial complains about the conditions of his confinement at JPCC in the days or weeks following his initial arrest on May 23, 2022. Sencial alleges that (1) he was denied a personal identification number ("PIN") for four weeks which denied him the ability to make phone calls; (2) the jail was cold; (3) cells were covered with feces and infested with mice; (4) he was not provided a mattress; (5) he was not able to write or communicate with the outside world while housed in the medical unit; (6) he was often denied access to shower facilities and cleaning supplies; (7) he endured abusive and unwarranted comments from prison staff; (8) the lights are left on 24 hours a day, causing sensory deprivation; and (9) he was occasionally denied food for dinner.  ECF No. 6-1, § III, ¶ 1-4, at 5-6.

### B.    Incident No. 1 – Medical Care for Ongoing Ailments in June, 2022

Sencial alleges that on June 22, 2022, he was found unconscious on the floor of his cell and brought to medical and put in cell 2MI. Sencial alleges that he was not provided medical treatment for his injury.  Instead, Sencial alleges that the nurses put him on tuberculosis confinement and isolated him in cell MI8 for one month, where he was denied access to daily showers.  Sencial asserts that the x-ray for his injury was delayed 15 days because he was in

3

solitary confinement, with no way to communicate with the outside per the instructions of Drs. Alexander-Sallier and Nowlin. Sencial claims that this also led to the loss of his personal property and pets when he could not make calls to arrange his personal matters. *Id*., ¶5, at 6.

Sencial further claims that on June 23, 2022, he attempted suicide due to his circumstances and encouragement by nurses and deputies. *Id*., ¶6, at 7. Sencial alleges that this caused him to lose "over 80,000 in equity and extreme emotional distress." *Id*. He also claims that the doctors at the jail failed to document his long-term disabilities of anterior cervical discectomy and fusion ("ACDF") in his cervical spine, a gunshot wound to his left thigh, a dog bite to his right arm, and resulting loss of strength and feeling in his limbs. *Id*. at ¶8. Sencial alleges that as a result, he needs help with daily tasks like climbing, showering, and sleeping because of nerve pain.

Sencial asserts that the doctors failed to document his disabilities, causing wanton infliction of pain for more than one year. Sencial claims that he made multiple requests for a lower bunk, seats for showers, a knee brace, and pain medication to no avail. Sencial asserts that the failure to provide these caused him additional injuries from a fall in the shower, fall off a top bunk, and hopping around the jail on one leg. He claims that all of this was deliberate indifference, inadequate medical care, and violations of "ADA" (presumably the Americans with Disabilities Act") by Drs. Alexander-Sallier and Nowlin. *Id*. at ¶9; *Id*. at 11.

**C.    Incident No. 2 – Medical Care After September 1, 2022, Fight with Another Inmate and Use of Excessive Force by Deputy**

Sencial alleges that on September 1, 2022, he was attacked by another inmate while housed in cell M13. Sencial claims that as a result, he lost vision in his left eye for one month and began having migraines and hearing loss. *Id*., ¶10, at 8. Sencial claims that on or about September 21, 2022, Deputy Jesse brought him to the medical unit for his complaints. Sencial alleges that upon arriving, Deputy Banks intervened in triage and said that Sencial could not write to medical or

grieve about the M13 fight, and that Sencial was premature in seeking medical attention. Sencial claims that Deputy Banks then dragged him through the jail back to the dorm with disregard to any excessive risk to his health and safety. Sencial claims that this also led to further injury and denial of medical care by Nurse McKinley. Sencial further states that he wrote a grievance complaint and went on an eight-day hunger strike and was still denied medical care.

Sencial acknowledges that he eventually saw Dr. Lumbar on October 24, 2022, a month and a half later, for his injuries from the M13 fight. *Id*. at ¶11. However, Sencial alleges that the doctor did not document the visit which further delayed treatment for his injuries. Sencial claims that he filed grievance complaints for more than eight months but still did not get treatment because of the negligence by the CorrectHealth staff and doctors. Sencial further claims that as a result, he has had loss of vision, loss of hearing, pain, migraines, and dizziness with chronic substantial pain which effects his daily activities. *Id*., ¶12, at 9.

Sencial alleges that Deputy Banks, Nurse McKinley, and Dr. Lumbar failed to provide adequate medical care and instead delayed, interrupted, and stopped treatment. *Id*. at 11.

**D.    Incident No. 3 – Medical Care After Ingesting Rat Feces**

Sencial alleges that on October 31, 2022, he was taken off suicide watch and placed in a suicide watch holding cell. *Id*., ¶13, at 9. Sencial asserts that he was given commissary items from a storage area that was infested with mice. Sencial claims that when eating the items, he ingested mice droppings and food covered in mice urine. He claims that he became ill and reported it to deputies and nurses. He alleges that his face went numb but he was denied poison control or treatment by Nurse McKinley. He claims that the nurse told him to get treated by a doctor when he was released. He also asserts that this mistreatment by CorrectHealth nurses led to acute

reactions, breathing problems, blackouts, and loss of enjoyment of life because his tongue lost sensation.

Sencial further claims that Cell 4DR was infested with mice, and that this caused more reactions, swelling in face and eyes, and blackouts while in Cell 10.  He alleges that Sheriff Lopinto failed to control the mice infestation in the jail.  He claims that mice were in his bedding and have bitten and scratched him, causing him to go into shock.  He also claims that he has been on medication as a result for six months.

Sencial alleges that Nurse McKinley failed to provide adequate medical care and that Sheriff Lopinto failed to maintain the jail facility through failure to address the rodent issue.  *Id.* at 12.

E.    **Incident No. 4 – False Imprisonment**

Sencial claims that he was sentenced on contempt charges on May 25, 2022, and ordered to serve six months flat time in JPCC.  *Id.*, ¶14, at 10.  He claims that he should have been released on November 26, 2022, but remained in jail long afterward.  Sencial alleges that, in response to his grievance complaints, jail officials told him he was being held without bond on warrants from another jurisdiction.  He claims, however, that there were no court orders to hold him without bond.  He alleges that a $50,000 bond was set by the state court.  He argues that Louisiana law allows a hold for only seven days on warrants, and that the City of Kenner did not formally book him on any charges.

Sencial also claims that Deputy Preatto failed to keep records and falsely imprisoned him for an additional three months past his release date.  He claims that he filed for habeas corpus relief

in Jefferson Parish and this federal court.[5]  Sencial alleges that as a result, Deputy Preatto and Sheriff Lopinto, as his employer, have falsely imprisoned him.  *Id*. at 12.

**F.    State Law Claims**

Sencial also alleges that the foregoing incidents violated state law torts of medical malpractice, intentional infliction of emotional distress, negligence, false imprisonment, and "adult abuse" which appears to be incorporated in his emotional distress claim.  *Id*. at ¶19.  He further claims that Sheriff Lopinto is liable under the doctrine of *respondeat superior* for the actions of his employees.  *Id*. at ¶20.  He similarly argues that CorrectHealth is responsible under the doctrine of *respondeat superior* for the actions of its employees, specifically, Drs. Alexander-Sallier, Nowlin, and Lumbar and Nurse McKinley.  *Id*., ¶21, at 13.

**G.    Relief Sought**

As relief, Sencial seeks an unspecified amount in compensatory and punitive damages, court costs plus interest, and any other relief deemed appropriate by the Court.  *Id*. at § VI.

**II.    Standards of Review**

**A.    Frivolousness**

Pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997e(c), the Court is required to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous.  The Court has broad discretion in determining the frivolous nature of the complaint.  *See Cay v. Estelle*, 789 F.2d 318, 325 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993).  However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

---

[5] The records of this Court contain no habeas filings by Sencial.  He has only filed two other § 1983 complaints, Civ. Action 22-4235"O"(1) and Civ. Action 23-3054"E"(5).

Under this statute, a claim is frivolous when it lacks an arguable basis in either law or fact. *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). "A [claim] lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999) (quoting *Davis v. Scott*, 157 F.3d 882, 889 (5th Cir. 1998)). A claim lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (citing *Neitzke*, 490 U.S. at 327-28). Thus, the Court must determine whether plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

B.  **Maliciousness**

Pursuant to § 1915(e) and § 1915A, the Court shall dismiss a prisoner's complaint as malicious when it "seek[s] to relitigate claims which allege substantially the same facts arising from a common series of events which have already been unsuccessfully litigated by the [prisoner]." *Wilson v. Lynaugh*, 878 F.2d 846, 850 (5th Cir. 1989). Thus, a duplicative case is malicious "if it involves 'the same series of events' and allegations of 'many of the same facts as an earlier suit.'" *Lewis v. Sec'y of Pub. Safety & Corr.*, 508 F. App'x 341, 344 (5th Cir. 2013) (quoting *Bailey v. Johnson*, 846 F.2d 1019, 1021 (5th Cir. 1988)).

The Fifth Circuit has long held that filing a successive civil action which duplicates claims made in previous lawsuits qualifies as malicious under the screening statute. *See Bailey*, 846 F.2d at 1021. That the prior cases may have involved different defendants does not affect the

maliciousness of a successive action. *Id*. Likewise, the assertion of a new claim in a successive complaint that arises from the same allegations of a prior complaint is also considered malicious. *See Potts v. Texas*, 354 F. App'x 70, 71 (5th Cir. 2009).

Moreover, "it is malicious for a pauper to file a lawsuit that duplicates allegations of another *pending* federal lawsuit by the same plaintiff." *Pittman v. Moore*, 980 F.2d 994, 995 (5th Cir. 1993) (emphasis added) (internal quotation marks omitted); *see Lewis*, 508 F. App'x at 344; *see also Bailey*, 846 F.2d at 1021 ("[A]n IFP complaint that merely repeats pending or previously litigated claims may be considered abusive and dismissed under . . . section 1915(d)."). District courts are "'vested with especially broad discretion' in determining whether such a dismissal is warranted." *Id*.

### C.    Constitutional Standards Applicable Under § 1983

The Eighth Amendment's prohibition on "cruel and unusual punishments" applies to both convicted inmates and pretrial detainees through the Fourteenth Amendment's Due Process Clause. *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976) (citations omitted); *Farmer v. Brennan*, 511 U.S. 825, 832 & 837 (1994). The constitutional rights of a pretrial detainee encompass both the procedural and substantive due process guarantees of the Fourteenth Amendment. *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999). "The Fourteenth Amendment requires that state officials not disregard the 'basic human needs' of pretrial detainees, including medical care." *Reed v. Krajca (Estate of Henson)*, 440 F. App'x 341, 343 (5th Cir. 2011). Thus, "the substantive limits on state action set by the Due Process Clause provide that the state cannot punish a pretrial detainee." *Reed v. Wichita Cnty. (Estate of Henson)*, 795 F.3d 456, 462 (5th Cir. 2015) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)).

Pretrial detainees, like the plaintiff in this case, may bring these constitutional challenges as an attack on a "condition of confinement" or as an "episodic act or omission." *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009); *Stevenson-Cotton v. Galveston Cnty.*, No. 22-40801, 2024 WL 138631, at *3 (5th Cir. 2024); *see also Reed*, 795 F.3d at 464 ("[T]here is no rule barring a plaintiff from pleading both alternative theories[.]").  In this case, Sencial has asserted both types of challenges against various defendants.

### a.    General Conditions of Confinement

An inmate's "challenge to a condition of confinement is a challenge to 'general conditions, practices, rules, or restrictions of pretrial confinement.'"  *Reed*, 795 F.3d at 463 (quoting *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 644 (5th Cir. 1996)).  Some typical examples of condition-of-confinement cases include challenges to prison overcrowding, mattresses on floors, restrictions on inmate privileges, and disciplinary segregation with limited time out of the cell.  *See Scott v. Moore*, 114 F.3d 51, 53 & n.2 (5th Cir. 1997).

Courts deciding the constitutionality of conditions of confinement of pretrial detainees must determine whether the conditions complained of are imposed for the purpose of punishment. *Bell*, 441 U.S. at 538.  Courts may find a punitive purpose upon direct proof of an expressed intent by detention facility officers to punish the pretrial detainee for a crime with which the detainee has been charged but not yet convicted.  *Id.*  In addition, courts may infer a punitive purpose if the challenged condition or restriction is not reasonably related to a legitimate governmental objective. *Id.* at 539; *Hamilton v. Lyons*, 74 F.3d 99, 104 (5th Cir. 1996).

To recover for conditions resulting from policies intentionally creating unconstitutional conditions, whether that intent is actual or presumed, the plaintiff must allege that the conditions complained of were the result of a prison official's act either "implement[ing] a rule or restriction

or otherwise demonstrat[ing] the existence of an identifiable intended condition or practice[.]" *Hare*, 74 F.3d at 645. Alternatively, the plaintiff must allege that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." *Id.* Though not expressly stated, "[t]he Fifth Circuit has at least suggested that condition-of-confinement claims are cognizable against individual actors only in their official capacities." *Nagle v. Gusman*, No. 12-1910, 2016 WL 768588, at *5 (E.D. La. Feb. 26, 2016) (collecting cases).

### b.  Episodic Acts or Omissions

For an episodic-act-or-omission claim, "the complained-of harm is a particular act or omission of one or more officials." *Scott*, 114 F.3d at 53. A plaintiff in an episodic-act-or-omission case "complains first of a particular act of, or omission by, the actor," and may also "point[] derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission." *Id.* To impose liability on a defendant in his individual capacity in an episodic-act-or-omission case, a pretrial detainee must establish that the defendant acted with subjective deliberate indifference. *Id.*

A person acts with subjective indifference if (1) "he knows that an inmate faces a substantial risk of serious bodily harm," and (2) "he disregards that risk by failing to take reasonable measures to abate it." *Anderson v. Dallas Cnty., Tex.*, 286 F. App'x 850, 860 (5th Cir. 2008) (citing *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006)). The mental state for subjective deliberate indifference requires that "(1) 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' and (2) 'he must also draw the inference.'" *Williams v. Hampton*, 797 F.3d 276, 281 (5th Cir. 2015) (quoting *Farmer*, 511 U.S. at 837); *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003). Thus, the official

is liable when he ignores a danger to an inmate after he has been made fully aware of it. *Jackson v. Cain*, 864 F.2d 1235, 1246-47 (5th Cir. 1989). Subjective deliberate indifference "is an extremely high standard to meet." *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

To impose liability on a defendant in his official capacity for an episodic event claim, and thus hold a municipality accountable for the constitutional violation, the detainee "must show that the municipal employee's act resulted from a municipal policy or custom adopted or maintained with objective deliberate indifference to the detainee's constitutional rights." *Scott*, 114 F.3d at 54; *see also Sibley v. Lemaire*, 184 F.3d 481, 488 (5th Cir. 1999) (requiring plaintiff to show objective deliberate indifference "[t]o hold superiors liable"). Objective indifference "considers not only what the policy maker actually knew, but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the plaintiff's rights." *Corley v. Prator*, 290 F. App'x 749, 750 (5th Cir. 2008) (citing *Lawson v. Dallas Cnty.*, 286 F.3d 257, 264 (5th Cir. 2002)).

III.  **Analysis**

A.  **Malicious Repetitive Claims (General Conditions, Incident Nos. 1, 2 & 3)**

Several of Sencial's claims are repetitive of claims presented in his pending or prior cases and must be dismissed. As identified in the sections above titled "General Jail Conditions" and "Incident No. 2", Sencial has included § 1983 and related state law claims in his Complaint challenging the general conditions of his confinement following his May 23, 2022, arrest. The conditions alleged in Sencial's Complaint include cold cells, rat infested dorms, lack of mattresses and blankets, and inadequate access to food, showers, and hygiene and cleaning supplies.

Sencial repeats similar claims regarding the alleged rat infestation of the jail, and Sheriff Lopinto's failure to take corrective measures on the rodent issue in his claim identified as "Incident No. 3." He also asserts that he endured abusive and unwarranted comments from various JPCC deputies and nurses, and that the lights were left on 24 hours a day. He also claims that he lost property, money, and pets as a result of his incarceration without a PIN or ability to contact others outside of the jail. He claims that he suffered injuries including loss of vision and headaches following an attack by another inmate in cell M13 on September 1, 2022, and that the medical care for these injuries was delayed and/or inadequate.

In Sencial's claim identified as "Incident No. 1", he also complains that he was placed in isolation on tuberculosis watch at the direction of Drs. Alexander-Sallier and Nowlin. Sencial alleges that this led to isolation and an inability to take showers and communicate with others outside of the prison. He also claims that he attempted suicide on June 23, 2022, which caused him further loss of property and further injury for which the medical care he received from unidentified nurses and deputies was inadequate.

Sencial asserted these same root federal and state claims against Sheriff Lopinto, CorrectHealth, and numerous other defendants in his pending Second Amended and Superseding Complaint in Civ. Action 22-4235"O"(1), still pending in the Eastern District of Louisiana. Sencial cannot pursue these same claims in two distinct cases, especially since he proceeds under the pauper statutes. The addition of new defendants or factual support for his duplicitous claims does not change the underling duplicity. *Bailey*, 846 F.2d at 1021. Sencial has every opportunity to pursue, and is pursuing, these claims in his prior pending suit.

Therefore, the duplicitous federal and state law claims identified in this Report in § I(A) as "General Jail Conditions Following May 23, 2022 Arrest", including rat infestation, temperature,

PIN provisions, mattresses, limited communication, etc.; in § I(C) as "Incident No. 2 – Medical Care After September 1, 2022, Fight with Another Inmate and Use of Excessive Force by Deputy,"[6] including denial of medical care and malpractice and negligence arising from the denial of medical care; and in § I(B) as "Incident No. 1 – Medical care for Ongoing Ailments in June, 2022," including and the isolation, loss of property, denial of showers, and attempted suicide events on June 22 and 23, 2022, and related medical indifference, malpractice, and negligence claims, asserted in-part in this Complaint against defendants Sheriff Lopinto, in his official and individual capacities, CorrectHealth, Nurse McKinley, Dr. Lumbar, Dr. Alexander-Sallier, and Dr. Nowlin should be dismissed pursuant to § 1915(e) and § 1915A as malicious and duplicitous of the federal and state law claims pending in Civ. Action 22-4235"O"(1).

### B. <u>Inadequate Medical Care and ADA Claims (Incident Nos. 1, 3)</u>

In his non-malicious claims, Sencial claims that Dr. Alexander-Sallier and Dr. Nowlin failed to provide him with adequate medical care and violated the ADA. More specifically, Sencial alleges that Dr. Alexander-Sallier and Dr. Nowlin violated the ADA by failing to document his alleged long-term disabilities, including ACDF in his cervical spine, a gunshot wound to his left thigh, a dog bite to his right arm, and resulting loss of strength and feeling in his limbs. *See*, § I, ¶B, Incident No. 1 (above). He also claims that his requests for a lower bunk, shower seats, a knee brace, and pain medication have been denied. Sencial alleges that this failure to document and provide care has resulted in his need for assistance with daily tasks and caused him to remain in pain for more than a year.

Sencial also claims that Nurse McKinley refused to provide him with medical care on October 31, 2022, when he complained that he had eaten food contaminated with rat excrement

---

[6] Sencial's claims of excessive force and medical indifference against Deputy Banks are not duplicitous and will be addressed later in this report.

and his face went numb.  *Id.*, ¶D, Incident No. 3 (above).  Sencial alleges that this maltreatment by a CorrectHealth nurse led to other reactions, breathing problems, blackouts, and loss of enjoyment of life when his tongue lost sensation.

### a.    Standards for Inadequate Medical Care Claims

Inadequate medical care for purposes of a § 1983 claim occurs only when the conduct amounts to "deliberate indifference to [the prisoner's] serious medical needs" that "constitutes the 'unnecessary and wanton infliction of pain.'"  *Estelle*, 429 U.S. at 104.  As applied to pretrial detainees like Sencial, "[t]he Fourteenth Amendment requires that state officials not disregard the 'basic human needs' of pretrial detainees, including medical care."  *Reed*, 440 F. App'x at 343. Under this deliberate indifference standard, a prison official is not liable unless the official knows of and disregards an excessive risk to inmate health or safety.  *Farmer*, 511 U.S. at 847; *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998).

Deliberate indifference is manifested in the providers intentional denial of medical care or intentional interference with the treatment once prescribed.  *Farmer*, 511 U.S. at 847.  To state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend "evolving standards of decency."  *Id*.   Thus, mere disagreement with medical treatment is insufficient to state a claim of deliberate indifference.  *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).  The Fifth Circuit has repeatedly noted that deliberate indifference is an extremely high standard to meet.  *Domino*, 239 F.3d at 756; *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

### b.    Standards for ADA Claims

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or

activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To allege a valid ADA claim, a plaintiff must assert that: (1) he has a qualifying disability; (2) he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) such discrimination is intentional and by reason of his disability. *Miraglia v. Bd. of Supervisors of La. State Museum*, 901 F.3d 565, 574 (5th Cir. 2018). A qualifying disability under these standards is a "physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(a)(1). The definition of "disability" is to be given broad construction. *See* § 12102(4)(A).

A failure to accommodate claim must offer "proof that the disability and its consequential limitations were known by the entity providing public services. . . . Mere knowledge of the disability is not enough; the service provider must also have understood the limitations the plaintiff experienced . . . as a result of that disability." *Windham v. Harris Cnty., Tex.*, 875 F.3d 229, 236 (5th Cir. 2017) (citations and quotation marks omitted, emphasis in original). The burden is on the plaintiff to "'specifically identify the disability and resulting limitations'" to the service provider with direct and specific terms. *Id.* at 237 (quoting *Taylor v. Principal Fin'l Group, Inc.*, 93 F.3d 155, 165 (5th Cir. 1996)). If a plaintiff fails to request an accommodation in this manner, he can prevail only by showing that the disability, the resulting limitation, and the necessary reasonable accommodation were all "open, obvious, and apparent" to the public entity's relevant agents. *Valentine v. Collier*, 993 F.3d 270, 290 (5th Cir. 2021).

To make out a *prima facie* failure-to-accommodate claim, a plaintiff must establish that the entity at issue failed to make reasonable accommodations for his disabilities. *See Ball v. LeBlanc*, 792 F.3d 584, 596 n.9 (5th Cir. 1999); *Taylor v. Hartley*, 488 F. Supp. 3d 517, 544 (S.D. Tex. Sept.

22, 2020). In this element of the plaintiff's claim, a plaintiff must show that he requested reasonable accommodations. *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007). "A plaintiff bears the burden of proving the reasonableness of an accommodation in his *prima facie* case." *Jones v. Lubbock Cnty. Hosp. Dist.*, 834 F. App'x 923, 926 (5th Cir. 2020)); *see also Block v. Tex. Bd. of Law Exam'rs*, 952 F.3d 613, 618 (5th Cir. 2020) (noting that plaintiff bears the burden to show a requested modification was reasonable).

      c.   <u>Application</u>

In this case, Sencial alleges that the refusal and failure of Drs. Alexander-Sallier and Nowlin to recognize and provide him with treatment for pain and other side-effects from his listed chronic pre-existing injuries resulted in injury. Sencial further alleges that this injury has caused unnecessary long-term pain and repeated difficulties in performing basic life tasks, for which he also has been denied ADA compliant accommodations. Sencial also claims that this has led to other falls and injuries at the jail for which he has not been provided adequate medical care, a claim now pending in his other lawsuit.

Sencial also claims that on October 31, 2022, Nurse McKinley blatantly ignored and refused to address his request for examination and treatment after allegedly swallowing rat excrement. He asserts that this failure led to numbness in his face, acute reactions, breathing problems, blackouts, and loss of sensation in his tongue. He also asserts that Nurse McKinley of failed to provide him with follow-up medical care after his September 21, 2022, incident with Deputy Banks (addressed below) despite his eight-day hunger strike.

In both instances, Sencial alleges a denial of requested medical care and attention for potentially serious medical conditions that purportedly led to further injury or pain. Therefore, Sencial has alleged non-frivolous claims against Dr. Alexander-Sallier, Dr. Nowlin, and Nurse

McKinley for medical indifference or inadequate medical care necessary to address serious medical conditions which has led to further physical and emotional injury. He also asserts that Drs. Alexander-Sallier and Nowlin's refusal or failure to recognize his chronic disabilities has resulted in the failure to provide him with basic accommodations, such as a lower bunk assignment, shower access, and other walking and sitting implements to aid in his daily hygiene and living activities.

At this stage, Sencial's Complaint is sufficient to state non-frivolous claims under the foregoing standards for medical indifference and violation of the ADA against these defendants to survive the statutory review for frivolousness. For these reasons, Sencial's related state law claims of malpractice,[7] negligence,[8] and intentional infliction of emotional distress[9] against Dr. Alexander-Sallier, Dr. Nowlin, and Nurse McKinley, and *respondeat superior* liability[10] against CorrectHealth, the defendants' employer, are also considered to be non-frivolous. The Complaint contains sufficient statements of facts to provide plausibility to plaintiff's claims even as to these parallel state theories of law. *See Stringfellow v. City of Ruston*, No. 16-0756, 2017 WL 3202830,

---

[7] In Louisiana, malpractice is defined as "any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient . . .." La. Stat. Ann. § 40:1231.1(13).

[8] La. Civ. Code art. 2315 provides that "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." Under this article, a person may recover damages for injuries caused by a wrongful act of another. *Landry v. Bellanger*, 851 So. 2d 943, 949 (La. 2003). Louisiana law embraces a broad civilian concept of "fault" that encompasses liability based on negligence or intentional misconduct. *Id.*

[9] To state a claim of intentional infliction of emotional distress under Louisiana law, a plaintiff must establish "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *Nicholas v. Allstate Ins. Co.*, 765 So.2d 1017, 1022 (La. 2000) (quoting *White v. Monsanto*, 585 So. 2d 1205, 1209 (La. 1991)). The conduct in question must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *White*, 585 So. 2d at 1209.

[10] CorrectHealth, as a contracted medical provider, may be held liable under a theory of *respondeat superior* like every other employer. *Deville v. Marcantel*, 567 F.3d 156, 173-74 (2009). This type of vicarious liability is derived from La. Civ. Code art. 2320, which provides that an employer is liable for the tortious acts of its employees "in the exercise of the functions in which they are employed."

at *22 (W.D. La. Jul. 26. 2017) (resolutions reached under § 1983 analysis apply to parallel Louisiana law claims under Art. 2315). Therefore, these limited federal and state claims should be allowed to proceed forward against these defendants.

### C.      Excessive Force and Medical Indifference by Deputy Banks – Incident No. 3

Sencial claims that on September 21, 2022, he was escorted by a deputy to the medical unit to receive medical care for continued migraines and hearing loss suffered after a prior fight with another inmate in cell M13. Sencial alleges that upon his arrival, Deputy Banks intervened and directed that Sencial was not to receive medical care and was not allowed to grieve about the fight he had on tier M13. Sencial claims Deputy Banks then dragged him back through the jail to his dormitory without regard for his health or safety. He claims that this was a denial of medical care and excessive force.

The same standards for assessing a claim for denial of medical care applicable to nurses and doctors, as addressed above, apply to prison personnel. Deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 106. "Such a showing requires the inmate to allege that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009) (quoting *Domino*, 239 F.3d at 756).

Questions of excessive force against a pretrial detainee involve substantive due process rights under the Fourteenth Amendment. *Hare*, 74 F.3d at 639 ("The constitutional rights of a pretrial detainee, on the other hand, flow from both the procedural and substantive due process

guarantees of the Fourteenth Amendment.") (citing *Bell*, 441 U.S. at 520 (stating the State must distinguish between a pretrial detainee and convicted felon as the State cannot punish a pretrial detainee)).

Force against a pretrial detainee is "excessive" and a violation of the Fourteenth Amendment when the force was objectively unreasonable. *Fairchild v. Coryell Cnty.*, No. 20-50237, 2022 WL 2733704, at *2 (5th Cir. Jul. 14, 2022) (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 396-70 (2015)). A pretrial detainee need only show the force was "objectively unreasonable." *Andrew v. St. Tammany Par.*, No. 15-2105, 2016 WL 447680, at *7 (E.D. La. Jan. 15, 2016) (citing *Brown v. Gusman*, No. 15-1491, 2015 WL 6827260, at *3-4 (E.D. La. Nov. 6, 2015)), *report and recommendation adopted by* 2016 WL 430455 (E.D. La. Feb. 4, 2016). "[P]retrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically.'" *Kingsley*, 576 U.S. at 359-401 (citing *Ingraham v. Wright*, 430 U.S. 651, 671-72 (1977); *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Several factors may be considered to determine the reasonableness of the force used: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley*, 576 U.S. at 397.

The Court is to look only to the objective reasonableness of the force without regard to underlying intent or motivation. *Gonzalez v. Seal*, No. 13-34, 2013 WL 6244183, at *8 (E.D. La. Dec. 3, 2013) (citing *Graham*, 490 U.S. at 397). "[A] pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Kingsley*, 576

U.S. at 398 (citing *Bell*, 441 U.S. at 540; *Block v. Rutherford*, 468 U.S. 576, 585-86 (1984)); *see also Andrew*, 2016 WL 447680, at *8 (citing *Thompson v. Beasley*, 309 F.R.D. 236, 247 (N.D. Miss. July 13, 2015)) (discussing that while *Kingsley* used the disjunctive "or," courts post-*Kingsley* have framed the inquiry as "whether, from an objective point of view [defendant's] actions were rationally related to a legitimate, nonpunitive governmental purpose and whether his actions were excessive in relation to that purpose.").

Under these standards, Sencial has stated non-frivolous claims for denial of medical care and excessive force against Deputy Banks. Sencial asserts that Deputy Banks intentionally prevented him from receiving medical care for his on-going medical issues and physically dragged him back to his cell without regard for his health or safety. As a pretrial detainee, the allegation of such a punitive and unwarranted act is sufficient to state a threshold claim at this stage.

For these reasons, the § 1983 medical indifference and excessive force claims asserted against Deputy Banks should be allowed to proceed past frivolousness review. This shall include Sencial's related state law claims of negligence and intentional infliction of emotion distress against Deputy Banks.[11]

### D.    False Imprisonment (Incident No. 4)

Sencial alleges that he was sentenced on contempt charges on May 25, 2022, to serve six months in Jefferson Parish. He argues that he should have been released on November 26, 2022, but remained falsely imprisoned in JPCC despite Sencial's numerous inquiries about his release. Sencial claims that JPCC officials, including defendants Deputy Preatto and Sheriff Lopinto, incorrectly detained him without bond on warrants from another jurisdiction, despite Sencial being granted a bond of $50,000 by the state court.

---

[11] The related *respondeat superior* state law claims against Sheriff Lopinto are addressed later in this opinion.

Under Louisiana law, false imprisonment "is the unlawful and total restraint of the liberty of the person." *Hernandez v. Theriot*, 709 F. App'x 755, 757-58 (5th Cir. 2017) (quotation marks and citations omitted). "It consists of the following two essential elements: (1) detention of the person; and (2) the unlawfulness of the detention." *Id*. (quoting *Kennedy v. Sheriff of E. Baton Rouge*, 935 So. 2d 669, 690 (La. 2006)). For purposes of § 1983, the Fourteenth Amendment also guarantees that no state may "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

The United States Fifth Circuit precedent establishes "that a jailer has a duty to ensure that inmates are timely released from prison." *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011). Holding a prisoner beyond expiration of his sentence without legal notice constitutes a denial of due process. *Parker v. LeBlanc*, 73 F. 4th 400, 404 (5th Cir. 2023) (citing *Crittindon v. LeBlanc*, 37 F. 4th 177, 188 (5th Cir. 2022)); *see also Douthit v. Jones*, 619 F.2d 527, 532 (5th Cir. 1980) ("Detention of a prisoner thirty days beyond the expiration of his sentence in the absence of a facially valid court order or warrant constitutes a deprivation of due process.").

In this instance, Sencial was on notice by his own documentation as to why he was held beyond his six-month sentence. Sencial simply disagrees with the information provided to him by the prison.

On numerous occasions, Sencial inquired and received responses as to the basis for his then-current holds aside from his sentence. For example, on September 7, 2022, almost three months before his anticipated release date of November 26, 2022, the jail records clerk informed Sencial that he was being held on fugitive warrants from the New Orleans Police Department and Kenner. ECF No. 12-1, at 20. On December 21, 2022, shortly after his contempt sentence expired, he was notified that his pending charges included attempted theft (for which he had a $1500 bond),

attempted aggravated assault, and three fugitive warrants from Kenner, St. Tammany, and the New Orleans Police Department. *Id*. at 24. As a follow-up to a November 30, 2022, grievance complaint, Deputy Preatto notified him that he had not been released because he had unspecified pending charges. *Id*. at 35; *see also*, *id*. at 38.

As Sencial continued to question his detention, the records clerks continued to provide answers to his duplicate requests. Sencial has provided these responses from the records clerks, including Preatto, to the Court. For instance, on January 23, 2023, Sencial was notified that he still had pending charges for theft (with a $1500 bond) and the same three fugitive warrants. *Id*. at 40. He continued to have pending charges in Jefferson Parish on February 24, 2023. *Id*. at 52. On April 3, 2023, a charge of failure to register as a sex offender was added for which Sencial was being held without bond at the time, along with the theft charge and St. Tammany fugitive warrant. By April 13, 2023, Sencial was apparently granted a motion to set bond in the amount of $50,000 in one of his Jefferson Parish criminal cases. *Id*. at 64.

Based on Sencial's own pleadings and records provided to the Court, he has no basis to assert a false imprisonment or delayed release claim as alleged. Sencial was on notice and was made aware of the multiple legal bases for his continued detention following the running of his six-month sentence for contempt. He has failed to state a claim on either of these grounds. Therefore, Sencial also has failed to establish a basis for any state law claim of negligence or intentional infliction of emotion distress where no constitutional or other state right has been violated by his detention.

For these reasons, Sencial's federal and state law claims of false imprisonment, delayed release, and related state law claims against Deputy Preatto and Sheriff Lopinto, in his official and

individual capacities, should be dismissed pursuant to § 1915(e) and § 1915A as frivolous and otherwise for failure to state a claim for which relief can be granted.

**E.**    **Claims Against Sheriff Lopinto – Official and Individual**

As noted above, the majority of Sencial's claims against Sheriff Lopinto, individually and officially, arise under his challenges to the general conditions of his confinement. These challenges to Sencial's confinement, including the rat infestation addressed in Incident No. 3, are to be dismissed as a malicious.  Sencial also seeks relief from Sheriff Lopinto in connection with his alleged false imprisonment and generally under a state law theory of *respondeat superior* for the actions of Preatto, which are to be dismissed for the reasons set forth above.

Remaining for the Court are Sencial's claims related to the alleged denial of medical care and excessive force by Deputy Banks, the only Sheriff's office employee against whom a claim was arguably made that was not otherwise malicious or frivolous.  In connection with this episodic event, Sencial alleges that Sheriff Lopinto is liable in his individual and official capacities as Banks' employer or supervising official.

An individual defendant can only be liable under § 1983 if he was "personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *Watson v. Interstate Fire & Cas. Co.*, 611 F.2d 120, 123 (5th Cir. 1980).  In this case, Sencial has not alleged that Sheriff Lopinto was present for or in any way directly involved in the denial of medical care or use of excessive force by Deputy Banks on September 21, 2022.

Without an allegation of personal involvement, a supervisory official like a sheriff cannot be held liable pursuant to § 1983 simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights.  *See Alton v. Tex. A&M Univ.*, 168 F.3d 196, 200 (5th Cir.

1999); *see also Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or respondeat superior liability."). A plaintiff must instead establish that he suffered a constitutional violation or physical injury directly resulting from an order, policy, or directive implemented by the sheriff to create vicarious liability under § 1983. *See Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 1991); *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988).

In this case, Sencial has not met this burden. Instead, Sencial seeks to hold the Sheriff responsible solely as a supervisory figure. Sencial has not presented allegations that Sheriff Lopinto was personally involved in these events. Sencial has not alleged that he suffered any constitutional injury as the result of any order, training, or other policy implemented by the Sheriff himself to state a claim under § 1983. *See Johnson*, 958 F.2d at 94; *Thompson*, 245 F.3d at 459; *Thompkins*, 828 F.2d at 304; *see also Praprotnik*, 485 U.S. at 124-25. Therefore, there is no basis for supervisory liability claims against the Sheriff under § 1983 in this case.

Similarly, Sencial has also failed to allege any basis to hold Sheriff Lopinto responsible in his official capacity under § 1983 for the acts of Deputy Banks.

On the other hand, Sencial also seeks to hold Sheriff Lopinto liable under state law on a theory of *respondeat superior* which is not precluded by his failure to state a direct claim against the Sheriff under § 1983. As noted above in connection with retained claims against CorrectHealth, the principle of vicarious liability under Louisiana state law is codified in La. Civ. Code art. 2320 and provides that an employer is liable for the tortious acts of its employees "in the exercise of the functions in which they are employed." For intentional tort cases, a court must determine "whether the tortious act itself was within the scope of the servant's employment."

*Ermert v. Hartford Ins., Co.*, 559 So. 2d 467, 478 (La. 1990).  However, "the fact that an act is forbidden or is done in a forbidden manner does not remove that act from the scope of employment." *Price v. La. Dep't of Transp. & Dev.*, 608 So.2d 203, 210 (La. App. 4th Cir. 1992).  In either case, negligent or intentional, "[t]he scope of risks attributable to an employer increases with the amount of authority and freedom of action granted to the servant in performing his assigned tasks." *Richard v. Hall*, 874 So. 2d 131, 138 (La. 2004).

For the foregoing reasons, Sencial has not alleged a personal action or official connection that would render Sheriff Lopinto liable under § 1983 for the acts of Deputy Banks.  Thus, Sencial's claims against Sheriff Lopinto in his individual and official capacity as a supervisory official at JPCC are frivolous and otherwise fail to state a claim for which relief can be granted under § 1915 and § 1915A.  However, Sencial's state law claim against Sheriff Lopinto for *respondeat superior* liability for the acts of Deputy Banks should be retained for further proceedings.

## F.    <u>State Law Claims</u>

As outlined above, Sencial alleges that the conditions of his confinement and episodic incidents addressed herein also violated state law tort theories of medical malpractice, intentional infliction of emotional distress, negligence, and false imprisonment.  With this, Sencial seeks to hold Sheriff Lopinto and CorrectHealth liable under the doctrine of *respondeat superior* for the actions of their respective employees.

Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over claims based on state law if it "has dismissed all claims over which it has original jurisdiction."  In the Fifth Circuit, the "general rule is to decline the exercise of supplemental jurisdiction when all federal claims are dismissed or eliminated prior to trial." *Sanchez v. Griffis*,

569 F. Supp. 3d 496, 518 (W.D. Tex. Nov. 2, 2021), *aff'd*, No. 21-51160, 2023 WL 7984732 (5th Cir. 2023). This rule is "neither mandatory nor absolute." *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009). Once § 1367(c)(3) has been satisfied, courts still consider the "common law factors of judicial economy, convenience, fairness, and comity." *Heggemeier v. Caldwell Cnty.*, 826 F.3d 861, 872 (5th Cir. 2016) (quoting *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 158-59 (5th Cir. 2011)).

In this case, not all federal claims have been dismissed. Therefore, the Court has discretion to retain jurisdiction over the remaining state law claims tied to those remaining federal claims. As discussed and recommended above, the duplicitous state law claims listed under "General Jail Conditions Following May 23, 2022 Arrest", "Incident No. 2 – Medical Care After September 1, 2022, Fight with Another Inmate and Use of Excessive Force by Deputy," "Incident No. 1 – Medical care for Ongoing Ailments in June, 2022," and "Incident No. 3 – Medical Care for Ingesting Rat Feces," asserted against defendants Sheriff Lopinto, in his official and individual capacities, CorrectHealth, Nurse McKinley, Dr. Lumbar, Dr. Alexander-Sallier, and Dr. Nowlin should be dismissed pursuant to § 1915(e) and § 1915A as malicious and duplicitous of the federal and state law claims pending in Civ. Action 22-4235"O"(1). As a result, these claims are ***not*** considered properly brought in this action and are ***not*** proceeding before the Court in this case.

Similarly, the undersigned has found that Sencial failed to state a non-frivolous federal or state law claim of false imprisonment or delayed release against Deputy Preatto. Therefore, Sencial has also failed to assert any direct or supervisory liability claims against Sheriff Lopinto, in his official and individual capacities arising therefrom. Because Sencial has failed to state any claim under federal or state law on this point, ***no*** state law claims would remain before the Court against either of these defendants on this issue.

On the other hand, the undersigned finds that Sencial has stated non-frivolous claims for medical indifference and violation of the ADA against defendants Dr. Alexander-Sallier, Dr. Nowlin, and Nurse McKinley which should survive the statutory review for frivolousness for the reasons previously addressed.  Because of this, the Court should accept supplemental jurisdiction over Sencial's related state law claims of malpractice, negligence, and intentional infliction of emotional distress asserted against Dr. Alexander-Sallier, Dr. Nowlin, and Nurse McKinley, and the *respondeat superior* liability asserted against CorrectHealth as the defendants' employer.

The same is true for the state law claims of *respondeat superior* against Sheriff Lopinto and the negligence and intentional infliction of emotion distress claims asserted against Deputy Banks in connection with Sencial's non-frivolous claims of medical indifference and excessive force against Deputy Banks.  The Court should exercise supplemental jurisdiction over these claims.

## IV.    <u>Recommendation</u>

It is therefore **RECOMMENDED** that Sencial's § 1983 against defendants Sheriff Joseph Lopinto, in his official and individual capacities, CorrectHealth Jefferson, LLC, Nurse Clara McKinley, LPN, Dr. Lumbar, Dr. Juanita Alexander-Sallier, and Dr. Philip Nowlin, addressed in "General Jail Conditions Following May 23, 2022 Arrest", "Incident No. 2 – Medical Care After September 1, 2022, Fight with Another Inmate and Use of Excessive Force by Deputy," and "Incident No. 1 – Medical care for Ongoing Ailments in June, 2022," and related state law medical indifference, malpractice, intentional infliction, negligence, and *respondeat superior* claims, should be **DISMISSED WITHOUT PREJUDICE** pursuant to § 1915(e) and § 1915A as malicious and duplicitous of the federal and state law claims pending in Civ. Action 22-4235"O"(1).

It is further **RECOMMENDED** that Sencial's § 1983 claims of false imprisonment and delayed release, and his related state law claims of false imprisonment, negligence, intentional infliction of emotion distress, and *respondeat superior* against Deputy Preatto and Sheriff Lopinto, in his official and individual capacities, as asserted in Incident No. 4, should be **DISMISSED WITH PREJUDICE** pursuant to § 1915(e) and § 1915A as frivolous and otherwise fail to state a claim for which relief can be granted.

It is further **RECOMMENDED** that Sencial's § 1983 medical indifference and violation of ADA claims and his related state law claims of malpractice, negligence, and intentional infliction of emotional distress, against Dr. Alexander-Sallier, Dr. Nowlin, and Nurse McKinley, and his state law *respondeat superior* liability claim against CorrectHealth, as addressed under Incidents Nos. 1 and 3 above and not otherwise to be dismissed as malicious, should be allowed to proceed forward and remain referred to the Magistrate Judge for further pretrial proceedings.

It is further **RECOMMENDED** that Sencial's § 1983 medical indifference and excessive force claims and state law claims of negligence and intentional infliction of emotional distress asserted against Deputy Banks, and related claims of *respondeat superior* liability against Sheriff Lopinto, as addressed under Incident No. 2 above, should be allowed to proceed and remain referred to the Magistrate Judge for further pretrial proceedings.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will

result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[12]

New Orleans, Louisiana, this 15th day of April, 2024.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[12]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.