**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| STEVEN SENCIAL | * | CIVIL ACTION NO. 23-3351 |
| | * | |
| Plaintiff | * | |
| | * | MAGISTRATE NO. 1 |
| VERSUS | * | |
| | * | |
| JEFFERSON PARISH SHERIFF JOSEPH | * | MAGISTRATE ROBY |
| LOPINTO, III, ET AL. | * | |
| | * | |
| Defendants | * | A JURY IS DEMANDED |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**NOW INTO COURT**, through undersigned counsel, come Defendants, CorrectHealth Jefferson, LLC, (hereinafter "CorrectHealth"), Juanita Sallier-Alexander, PA, (incorrectly identified as Dr.), Dr. Phillip Nowlin, and Clara McKinley, LPN, (hereinafter collectively "Defendants"), who respectfully submit this Memorandum in Support of their Motion for Summary Judgment.

### I.    PROCEDURAL BACKGROUND

Plaintiff, Steven Sencial, (hereinafter "Plaintiff"), filed this lawsuit *pro se* on August 9, 2023.[1] On September 7, 2023, Plaintiff refiled his *pro se* Complaint and listed Sheriff Joseph Lopinto, III, CorrectHealth Jefferson, LLC, JPSO Deputy Jody Banks, JPSO Deputy L. Preatto, JPSO Sgt. Steven Rabb, JPSO Deputy Kevin Smith, Juanita Alexander-Sallier, PA,  Dr. Philip Nowlin, Clara McKinley, LPN, and Dr. Lumbar, as defendants.[2] Plaintiff filed a Motion to Amend, to include JPSO Deputy Sgt. Charles Buckalew and Jefferson Parish as defendants, on February

---

[1] R. Doc. 6-1.

[2] R. Doc. 6-1.

6, 2024.[3] He also filed a Notice of Voluntary Dismissal, to remove Sgt. Rabb and Deputy Smith as defendants.[4] On February 26, 2024, the Court dismissed Sgt. Rabb and Deputy Smith from this action, and denied Plaintiff's Motion to add Sgt. Buckalew and Jefferson Parish as defendants.[5]

On April 15, 2023, the Court issued its Partial Report and Recommendation, finding Plaintiff's listed claims were already pending in the Eastern District of Louisiana and, as such,  he cannot pursue these same claims in malicious and duplicative actions.[6] The Court recommended Plaintiff's §1983 claims against Sheriff Lopinto, LPN McKinley, Dr. Lumbar, PA Alexander-Sallier, and Dr. Nowlin, addressed in Incident #1, and related state law medical indifference, malpractice, intentional infliction, negligence, and *respondeat superior* claims should be dismissed without prejudice.[7] On January 23, 2025, in its Report and Recommendation, this Court recommended Plaintiff's § 1983, Americans with Disabilities Act, (hereinafter "ADA"), and Rehabilitation Act, (hereinafter "RA"), claims against PA Alexander-Sallier and Dr. Nowlin, in their individual capacities, be dismissed with prejudice and recommended dismissing, without prejudice, Plaintiff's state law claims of malpractice and negligence alleged against Dr. Nowlin, PA Alexander-Sallier, and LPN McKinley as premature.[8] The Court further recommended that Plaintiff's §1983 medical indifference and ADA claims against PA Alexander-Sallier, Dr. Nowlin, and LPN McKinley, and his state law *respondeat superior* claims against CorrectHealth, not be

---

[3] R. Doc. 15.

[4] R. Doc. 15.

[5] R. Doc. 16 at 5.

[6] R. Doc. 18 at 28. This Court conducted extensive investigation to clarify Plaintiff's allegations. Defendants rely upon this Court's clarification and organization of Plaintiff's allegations throughout.

[7] *Id.*

[8] R. Doc. 45 at 19-20.

dismissed **at that time**.[9] This Court adopted the Report and Recommendation, granting leave for Plaintiff to amend his Complaint in the Order of April 15, 2025.[10] The Order adopting this Court's Report & Recommendation listed the following claims as remaining: "(i) Plaintiff's claims of medical indifference against Nurse McKinley; (ii) Plaintiff's state law intentional tort claims against Dr. Nowlin, Dr. Alexander Sallier, and Nurse McKinley; and (iii) the related respondeat superior claims against CorrectHealth."[11] It is unclear whether the medical indifference claim against PA Alexander-Sallier and Dr. Nowlin remain,[12] so out of an abundance of caution these claims are addressed in this motion.

Plaintiff then filed an Amended Complaint on April 28, 2025, asserting §1983, ADA, and RA claims against PA Alexander-Sallier and Dr. Nowlin in their official capacities.[13]

Plaintiff requested a Medical Review Panel, (hereinafter "MRP"), composed of practicing physicians, to investigate his disagreements with his treatment on October 5, 2022.[14] The MRP was fully briefed on all issues by all parties. Plaintiff presented his allegations involving all claims remaining in this case, including:

---

[9] R. Doc. 45 at 20.

[10] R. Doc. 71 at 1.

[11] R. Doc. 47 at 3, 5

[12] *See* R. Doc. 45 at 10 (providing "Sencial's §1983 Medical Indifference and violation of ADA claims under Incident One against Dr. Alexander-Sallier and Dr. Nowlin arising from their alleged failure to recognize and provide treatment for pain . . . from his listed chronic pre-existing conditions . . . .")

[13] R. Doc. 49.

[14] *See* Exhibit A (MRP Request).

The MRP, composed of Dr. Rani Whitfield, Dr. Jeffery Rouse, and Dr. Laurence Durante, unanimously determined as follows:

---

[15] Exhibit B (Plaintiff's Submission to the PCF, received 12/08/22) at p. 3.

## REASONS

**AS TO CORRECTHEALTH JEFFERSON LLC, DR. PHILLIP NOWLIN, AND JUANITA ALEXANDER SALLIER, NP:**

1. The patient was appropriately evaluated for his complaints in a timely manner. The records indicate that an adequate response was made to all his complaints.

2. Correcthealth staff appropriately and timely responded and made reasonable decisions regarding his admittance to and removal from suicide watch. He was provided the standard of care with regards to psychosocial and pharmacologic intervention. The choice of medication, Prozac, was reasonable and appropriate for his mental complaints.

3. There was comprehensive documentation of each complaint, and an appropriate response was made as per the standard of care. [16]

Plaintiff never amended to re-assert his state law malpractice/medical negligence claims which this Court dismissed as premature after the MRP ruled against him, in June of 2025.

This is currently the first case scheduled for trial relating to Plaintiff's incarceration in the Jefferson Parish Correctional Center, as the earlier filed suit, Docket No. 22-CV-4235, has been stayed and administratively closed due to Plaintiff's "unexcused and (still) unexplained failure to appear at the pretrial conference" [17] and Plaintiff's failure to participate in preparation of the pre-trial order. [18]

## II.    LAW & ARGUMENT

A party may move for summary judgment in full, or in part, for any claim or defense. A court should grant the motion on showing that there is no genuine dispute of material fact and the

---

[16] Exhibit C (Medical Review Panel Opinion) (emphasis added).

[17] Exhibit D at 2 (R. Doc. 189 from 22-CV-4235).

[18] Exhibit D at 3 (R. Doc. 189 from 22-CV-4235).

movant is entitled to judgment as a matter of law.[19] A genuine dispute of material facts *only* exists if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party.[20] The moving party bears the initial burden of identifying the specific facts that show an absence of a genuine issue of material fact.[21] Once this is done, the non-moving party must set forth specific facts showing a genuine issue for trial to prevent summary judgment or the court should grant summary judgment.[22] Plaintiff is unable to do so for any of his claims, and so they all should be dismissed with prejudice.

### A.    Plaintiff is unable to establish liability as a matter of law.

### i.  Plaintiff's ADA and RA claims fail for a host of reasons.

#### a. Private entities and their employees, even when in an "official" capacity, are not subject to suit under the ADA.

This Court held that "[s]tate and local prisons fall squarely within" the jurisdiction of the ADA.[23] This was in the context of Plaintiff's now dismissed allegations against Physician Assistant Alexander-Sallier and Dr. Nowlin in their private capacities, not as official representatives for CorrectHealth, as an entity. Therefore, the distinction between the public Jefferson Parish Correctional Center and the private medical provider was not briefed at that time.[24] The weight of authority, including a Circuit case decided in the interim, holds that, while

---

[19] Fed. R. Civ. P. 56.

[20] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[21] *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

[22] *Id.*

[23] R. Doc. 45 at 13.

[24] Defendant's understanding is that Physician's Assistant Alexander-Sallier and Dr. Nowlin, in their official capacities, serve as stand ins for CorrectHealth as an entity and treat them accordingly. To the extent Plaintiff is asserting ADA/RA claims against CorrectHealth then the claims against PA Alexander-Sallier and Dr. Nowlin are duplicative and should be dismissed. *See Kimble v. Parish of Jefferson*, 2022 WL 2192281 *6 (E.D. La. 2023) (holding "when a §1983 plaintiff sues both the local government entity and the entity's agent in an official-capacity, the official-capacity claim is duplicative and subject to dismissal on that basis.")

the public prison or other entity is subject to the ADA, private contractors providing services are not.[25]

Plaintiff's ADA claims should be dismissed because the medical defendants are not "public entit[ies]," as 42 U.S.C. § 12132 requires. "Individuals and private entities are not subject to title II of the ADA."[26] The Eleventh Circuit, in *Brennan v. Thomas,* affirmed the summary judgment dismissing nearly identical claims brought by a prisoner against his healthcare providers for allegedly failing to provide accommodations to his preference.[27] This was in accord with both the Third and Second Circuits.[28] A court within this Circuit held that a private medical contractor providing medical services under a contract with a municipality is not a "instrumentality of the government" and thus not subject to the ADA.[29] Courts have consistently differentiated between public entities, such as prisons or other state or local subdivisions, and the private contractors providing services. Thus, this Court should dismiss Plaintiff's ADA claims because "[a] private

---

[25] *See Phillips v. Tiona*, 508 Fed. App'x 737, 754 (10th Cir. 2013) (holding "we join the Eleventh Circuit and the overwhelming majority of other courts that have spoken directly on the issue, and hold Title II of the ADA does not generally apply to private corporations that operate prisons.");  *see also Drakes v. T.C.C.F.*, 2014 WL 4794454 (N.D. Miss. 2014) (holding "a private prison or prison management corporation is not a public entity under the ADA; *see also Maringo v. Warden*, 283 Fed. App'x 205, 206 (5th Cir. 2008) (concluding that Title II is inapplicable to CCA or its employees"); *see also Meeks v. Ray*, 2025 WL 2215876 (E.D Tex. April 7, 2025) (holding " to the extent Meeks alleges ADA claims against the Lasalle Defendants, those claims also fail as a matter of law because a private prison or private prison-management company is not a 'public entity' for purposes of the ADA."); *see also Morgan v. Mississippi*, 2009 WL 1609060 (S.D. Miss. June 8, 2009) (collecting cases regarding private medical contractors and the inapplicability of public entity classification to such organizations).

[26] *Brennan v. Thomas*, 780 Fed. App'x 813, 822 (11th Cir. 2019).

[27] 780 Fed. App'x 813 (11th Cir. 2019).

[28] *See Montanez v. Price*, 154 F.4th 127 (3d Cir. 2025); *accord Green v. City of New York*, 465 F.3d 65, 78 (2nd Cir. 2006).

[29] *Doe v. Steward Health Care Sys. LLC*, 2018 WL 4233816 at *9 (S.D. Tex. July 31, 2018), *report and recommendation adopted,* 2018 WL 4232921 (S.D. Tex. Sept. 5, 2018) (citing *Green v. City of New York*, 465 F.3d 65, 78 (2nd Cir. 2006)); *see also, Phillips*, 508 Fed. App'x 737, 749, *quoting*, *Cox v. Jackson*, 579 F.Supp. 2d 831, 852 (E.D. Mich. 2008) ("holding that a private company providing medical services to a prison is not a public entity, stating, '[a] private contractor does not become a 'public entity' under Title II merely by contracting with a governmental entity to provide governmental services.").

contractor does not . . . become liable under Title II merely by contracting with the State to provide governmental service, essential or otherwise."[30]

### b. Plaintiff has failed to plead or prove federal funding to support a claim under the Rehabilitation Act.

The key distinction between a claim under the ADA and RA is that the ADA applies solely to public entities, while the RA applies to any entity receiving federal funding. Plaintiff has the affirmative burden of establishing this funding,[31] and has neither plead nor provided any evidence to support the same.  Therefore, the "RA is inapplicable to his claims."[32] Plaintiff's RA claims should be dismissed for this reason alone, notwithstanding that he has failed to provide any evidence to rebut the unanimous determination of the physicians on the Medical Review Panel that all his complaints were appropriately treated, as established below.

### c. A prisoner's disagreements with his medical care do not constitute violations of the ADA and RA.

Plaintiff's complaints regarding alleged failures in documentation provide no support for a violation of the ADA and RA. The Fifth Circuit is clear, "[t]he ADA is not violated by a prison's failure to attend to the medical needs of its disabled prisoners"[33] and that the ADA "does not set out the standard of care for medical treatment."[34]  *Hicks v. Collier* is directly on point. The *Hicks* court involved a prisoner alleging disability because of an alleged spinal condition who alleged he

---

[30] *Phillips*, 508 Fed. App'x at 748-749, *quoting Edison v. Douberly*, 604 F.3d 1307, 1310 (11th Cir. 2010).

[31] *Moreno v. Hidalgo Cnty.*, 7:24-CV-0344, 2025 WL 2043978 (S.D. Tex. June 6, 2025), *report and recommendation adopted,* 7:24-CV-00344, 2025 WL 2044192 (S.D. Tex. July 21, 2025) (citing *Block v. Tex. Bd. of L.Exam'rs*, 952 F.3d 613, 619 (5th Cir. 2020).

[32] *Nottingham v. Richardson*, 499 Fed. App'x 368, 376 (5th Cir. 2012).

[33] *Hicks v. Collier*, 2024 WL 5508391 (S.D. Tex. Oct. 31, 2024), *report and recommendation adopted,* 2:24-CV-00126, 2025 WL 762365 (S.D. Tex. Mar. 11, 2025) (quoting *Nottingham v. Richardson*, 499 F. App'x 368, 377 (5th Cir. 2012); *see also Hale v. Harrison Cnty. Bd. of Supervisors*, 8 F.4th 399 (5th Cir. 2021).

[34] *Hicks* 2024 WL 5508391 at *25 (collecting cases).

was denied care for more than a year.[35] The Court dismissed the plaintiff's claims for ADA and RA violations because those were properly brought under malpractice or denial of care theories.[36] The Fifth Circuit is clear in adopting the holdings of other courts; there is not a claim under the ADA or RA when "it is simply a restatement of the denial-of-medical care claim.[37] As the Southern District of Texas put it, "a jail's general failure to provide competent medical care cannot support an ADA or RA claim unless there is 'some indication that [the plaintiff] was treated differently because of his disability'" and that courts "have been relatively consistent in their application of this rule, generally dismissing ADA and RA claims based solely on the denial of medical care."[38] Similarly, the Southern District of Mississippi held, "the ADA does not provide a remedy for medical malpractice or the inadequate treatment of disabled inmates."[39]Accordingly, even if one ignores the MRP's conclusion that: "an adequate response was made to all his complaints[;]" and that [t]here was comprehensive documentation of each complaint, and an appropriate response was made as per the standard of care," Plaintiff's ADA and RA claims should be dismissed.

### d. The Medical Review Panel is unrebutted evidence establishing that Plaintiff cannot prove a violation of the ADA and RA.

The reasonable medical treatment provided by CorrectHealth staff, including PA Alexander-Sallier and Dr. Nowlin, was confirmed by experts in the Medical Review Panel.[40]

---

[35] *Hicks* 2024 WL 5508391 at *8.

[36] *Id.* at *25.

[37] *Walls v. Texas Dep't of Criminal Justice*, 270 Fed. App'x 358, 359 (5th Cir. 2008) (per curium) (citing *Buchanan v. Maine*, 469 F.3d 158, 174 (1st Cir. 2006) and *Bryant v. Madigan*, 84 F.3d 246, 248 (7th Cir. 1996).

[38] *Wagner v. Harris Cnty., Texas, Defendant.*, 4:23-CV-2886, 2024 WL 4438668 at *10 (S.D. Tex. Oct. 7, 2024), *on reconsideration on other grounds, sub nom. Wagner v. Harris Cnty., Texas*, 4:23-CV-2886, 2025 WL 950088 (S.D. Tex. Mar. 28, 2025) (quoting *Nottingham v. Richardson*, 499 F. App'x 368, 377 (5th Cir. 2012)) (collecting cases).

[39] *Morgan*, 2009 WL 1609060 at *14.

[40] Exhibit C (MRP Opinion).

Plaintiff has, therefore, failed to satisfy the requirements for a viable ADA and RA claim against PA Alexander-Sallier, nor Dr. Nowlin. Under the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[41] A successful plaintiff must show: "(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, and (3) that such discrimination is by reason of his disability."[42] The RA mandates, "no qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."[43] To have a qualifying disability, Plaintiff must demonstrate: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."[44] Further, under the ADA, a plaintiff may assert a claim for failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual."[45] The Fifth Circuit has instructed that a plaintiff arguing a failure-accommodate theory must prove: "(1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations."[46] Courts within the

---

[41] 42 U.S.C. § 12132.

[42] *Hale v. King*, 642 F. 3d 492, 499 (5th Cir. 2011).

[43] 29 U.S.C. § 794(a).

[44] *Hale*, 642 F. 3d at 499-500 (internal quotations omitted).

[45] 42 U.S.C. § 12112(b)(5)(A).

[46] *Smith v. Harris Cnty., Texas*, 956 F.3d 311, 317 (5th Cir. 2020) (quoting *Ball v. LeBlanc*, 792 R.4d 584, 596 n.9 (5th Cir. 2015).

Fifth Circuit evaluate ADA and RA claims under an identical standard.[47]

Plaintiff contends that the ADA and RA claims against PA Alexander-Sallier, and Dr. Nowlin are related to Incident #1 as described in the Report and Recommendation.[48] Plaintiff alleges that the doctors failed to document his long-term disabilities of anterior cervical discectomy and fusion (hereinafter "ACDF") in his spine causing loss of strength and feeling in his limbs.[49] "He suggests that the lack of documentation about his disabilities resulted in no accommodations, causing additional injuries.[50] However, the records shows that Plaintiff had this surgery on 08/12/11[51] and that by 05/22/12 he was "looking to go back to work."[52] The records further confirm that Dr. Najeeb Thomas, Plaintiff's independent treating neurosurgeon, concluded that "the x-rays look like he is solidly healed from his injury and if he is clinically doing well, I see no reason why he shouldn't be able to go back to performing his work as a plumber." [53] Moreover, Plaintiff testified that he thought he went back to work in Wisconsin after this and even obtained his license to do plumbing work in California in 2017,[54] contradicting his assertion that he has a disability as a result of his fusion surgery.

Furthermore, Plaintiff does not have any evidence establishing: (1) he objectively had the

---

[47] *Hicks v. Collier*, 2:24-CV-00126, 2024 WL 5508391 (S.D. Tex. Oct. 31, 2024), *report and recommendation adopted,* 2:24-CV-00126, 2025 WL 762365 (S.D. Tex. Mar. 11, 2025) (quoting *Nottingham v. Richardson*, 499 F. App'x 368, 377 (5th Cir. 2012).

[48] *See* R. Doc. 45 at 2.

[49] *See* R. Doc. 45 at 2.

[50] *See* R. Doc. 45 at 2.

[51] Exhibit E (08/12/11 Operative Note attached as Exhibit 2 to Plaintiff's deposition).

[52] Exhibit F (05/22/12 Note as Exhibit 4 to Plaintiff's deposition); Exhibit G at p. 49 (Plaintiff's Deposition Excerpts).

[53] Exhibit F (05/22/12 Note as Exhibit 4 to Plaintiff's deposition); Exhibit G at p. 49 (Plaintiff's Deposition Exceprts).

[54] Exhibit G at p. 51 (Plaintiff's Deposition Excerpts).

impairments listed above; (2) has provided no record from prior to his incarceration that could place medical staff on notice of his purported disabilities; (3) any evidence he was regarded as having such. Plaintiff cannot provide any evidence supporting the contention that any such disability was known to medical personnel or that staff failed to provide reasonable accommodations. Lacking any form of documentation, PA Alexander-Sallier and Dr. Nowlin could not have accommodated a patient without being presented with evidence of such limitations while providing treatment to Plaintiff. Any self-serving and unsupported conclusory statements to the contrary are disproved by the unrebutted unanimous expert determination of the Medical Review Panel.

Even if Plaintiff showed he possessed a qualifying disability; he has not asserted evidence that medical personnel failed to properly treat his conditions. In contrast,  the MRP's findings established: (1) PA Alexander-Sallier and Dr. Nowlin appropriately evaluated each of his complaints in a timely manner and; (2) properly responded to them in accordance with the medically accepted standard of care.[55] Showing Plaintiff's inability to establish that he was discriminated against, or that he was denied specific benefits or services as a result of his purported conditions. Therefore, Plaintiff has failed to establish a viable ADA or RA claim against CorrectHealth, PA Alexander-Sallier, and Dr. Nowlin, and any further attempts to do so would be a futile waste of limited judicial resources. As such, this Court should Dismiss the claims with prejudice.

        ii.        **Plaintiff's §1983 claim against Dr. Nowlin, PA Alexander-Sallier, and LPN McKinley fail because there is no evidence of deliberate indifference.**

Plaintiff's § 1983 claims against his medical providers fail because there is no evidence of

---

[55] Exhibit C (MRP Opinion).

deliberate indifference to rebutting the unanimous conclusions of the MRP. To prove deliberate indifference "requires that the defendant act with **something more than mere negligence** [,]"[56] as **"[c]ontentions that amount to a mere disagreement with the speed, quality or extent of medical treatment or even negligence do not give rise to a § 1983 claim."**[57] Plaintiff alleges: that LPN McKinley was aware that he consumed rodent waste and denied him poison control or treatment, leading to subsequent medical issues;[58] and that PA Alexander-Sallier and Dr. Nowlin were aware he needed medical accommodations and deliberately failed to provide them. However, there is no evidence that indicates that medical providers and staff acted negligently.[59] Louisiana state medical malpractice law creates an identical standard for doctors as well as nurses.[60]

The MRP's unrebutted decision confirms that LPN McKinley, PA Alexander-Sallier, and Dr. Nowlin provided reasonable medical treatment to Plaintiff.[61] The MRP found, "[t]he patient was appropriately evaluated for his complaints in a timely manner. The Records indicate that an

---

[56] *Cadena v. El Paso Cnty.*, 946 F. 3d 717,728 (5th Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)) (emphasis added); *Wilson v. Seiter*, 501 U.S. 294 (1991) ("To be sure, mere negligence would satisfy neither that nor the more lenient 'deliberate indifference' standard."); *Thompson v. Upshur Cnty.*, *Tx.*, 245 F. 3d 447, 459 (5th Cir. 2001) ("deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm."); *Washington v. Yvette*, 2010 WL 1418590, at *3 (W.D. La. Mar. 17, 2010*), report and recommendation adopted*, 2010 WL 1407198 (W.D. La. Apr. 6, 2010) (citing *Sibley v. LeMaire*, 184 F. 3d 481, 489 (5th Cir.1999)) ("It is not enough to demonstrate that the defendant was negligent, rather it must be shown that the actions were so reckless as to amount to deliberate indifference."); *Daugherty v. Univ. of Texas Med. Branch*, 2009 WL 2342753, at *2 (S.D. Tex. July 29, 2009) (citing *Estelle v. Gamble*, 429 U.S. 97, 97 (1976) ("For a lack of medical care to rise to the level of a constitutional violation, . . . a Plaintiff must meet a much higher standard than negligence or malpractice."); *Russell v. Gusman*, 2011 WL 2457925, at *2 (E.D. La. June 17, 2011) (this Court held "the federal constitution does not require even that an inmate's medical care be free from negligence or medical malpractice."); *Youngberg v. Romeo*, 457 U.S. 307, 322–23 (1982) ("As long as medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights.").

[57] *Patterson v. Orleans Par. D.A. Off.* 2008 WL 915447, at *3 (E.D. La. Mar. 31, 2008).

[58] R. Doc. 45 at 3.

[59] Exhibit C (MRP Opinion).

[60] *Gibson v. Bossier City Gen. Hosp.*, 594 So. 2d 1332 (La. Ct. App. 1991).

[61] Exhibit C (MRP Opinion).

adequate response was made to **all** his complaints . . . and appropriate as per the standard of care."[62] The Panel properly concludes that the medical staff created "comprehensive documentation of **each** complaint" and appropriately responded to them all.[63] This includes alleged disabilities and appropriate accommodations.

This Court recognized in *Paterson v. Orleans Parish D.A. Office*, "[c]ontentions that **amount to a mere disagreement with the speed, quality or extent of medical treatment or even negligence do not give rise to a [an intentional tort].**"[64] Just as the *Paterson* court recognized, if there was no negligence in a patient's care, then *a fortiori* Plaintiff will be unable to prove an intentional tort or deliberate indifference. Therefore, the Plaintiff cannot show that CorrectHealth employees' actions were wanton, nor that they desired to inflict distress, based on the MRP findings and facts alleged in the Complaint. Plaintiff fails to meet the legal requirements for an intentional tort, which are a "much higher standard than mere negligence or malpractice."[65] Plaintiff's claims against CorrectHealth, and its employees fail as a matter of law.

The MRP's findings demonstrate that Plaintiff cannot show that individuals; refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in similar conduct that would clearly evince a wanton disregard for any serious medical needs. For the same reasons above, explaining why the MRP's finding precludes a claim for IIED related to Plaintiff's medical care, the unanimous finding also justifies summary judgment on the issue of alleged deliberate indifference.

---

[62] Exhibit C (MRP Opinion) (emphasis added).

[63] Exhibit C (MRP Opinion) (emphasis added).

[64] 2008 WL 915447, at *3 (E.D. La. Mar. 31, 2008) (Lemelle, J.) (emphasis added).

[65] *Daugherty v. Univ. of Texas Med. Branch*, 2009 WL 2342753 at *2 (S.D. Tex. July 29, 2009) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976).

### iii. The Plaintiff's state law claims fail as a matter of law.

"The opinion of the medical review panel is admissible, expert medical evidence that may be used to support or oppose any subsequent medical malpractice suit."[66] The Medical Review Panel's findings show that Plaintiff will be unable to prove any negligence-based state law claim relating to his medical treatment. The expert panelists reviewing Plaintiff's claims unanimously concluded "an appropriate response was made to each of his complaints."[67] To date, Defendants have not received any expert witness disclosure or witness list from Plaintiff in the above captioned matter, and time for doing so has expired.[68] Thus, the MRP report is unrebutted evidence showing Plaintiff's medical treatment comported with the applicable standards of care.

It is "well established" in Louisiana law that a plaintiff asserting medical malpractice is "generally required to produce expert medical testimony."[69] The requirement for a plaintiff to support their allegations with expert testimony is "especially necessary where the defendant in a medical malpractice action has filed a motion for summary judgment" and supported the motion with "expert opinion evidence that his treatment met the applicable standard of care."[70] "Thus, in order to defeat [defendant's] motion for summary judgment, the plaintiff [i]s required to oppose the motion with competent expert medical evidence, in the form of an expert witness."[71] Plaintiff has no such evidence, and therefore, summary judgment is warranted on all of Plaintiff's state law claims.

---

[66] *Mariakis v. North Oaks Health System*, 18-165 (La. App. 1 Cir. 09/21/18), 258 So.3d 88, 94.

[67] Exhibit C (MRP Opinion)

[68] R. Doc. 70 at 2 (Scheduling Order).

[69] *Mariakis v. North Oak Health System*, 2018-0165 258 So.3d 88, 94 (La. App. 1 Cir. 09/21/18).

[70] *Britt v. Taylor*, 37,378, 852 So.2d 1128, 1133 (La. App. 2 Cir. 08/20/03).

[71] *Mariakis v. North Oaks Health System*, 18-165 (La. App. 1 Cir. 09/21/18), 258 So.3d 88, 94.

Further, the Medical Review Panel's findings show Plaintiff's allegations of intentional torts by medical staff and providers fail as a matter of law for the same reasons outlined above. A claim of intentional infliction of emotional distress, (hereinafter "IIED"), under Louisiana law, requires: "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the Plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct."[72] The conduct in question must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."[73] The MRP's decision that all applicable standards of care were met demonstrates that the conduct was not "atrocious or intolerable," as required by the Louisiana Supreme Court in *White v. Monsanto*.[74] Therefore, this Court should dismiss Plaintiff's claim for intentional infliction of emotional distress, with prejudice because amendment would be futile.

This includes Nurse McKinley's 11/10/22 examination of Plaintiff following his alleged ingestion of rodent waste. Plaintiff concedes in his deposition testimony that Nurse McKinley performed a water swallow test by observing him drinking a four-ounce cup of water with his medications during the same visit he complained of a swollen tongue.[75] Plaintiff agreed that he was able to drink and swallow without difficulty or drooling during this visit.[76] Plaintiff further

---

[72] *Nicholas v. Allstate Ins. Co.*, 1999-2522, 765 So. 2d 1017, 1022 (La. 2000) (quoting *White v. Monsanto*, 585 So. 2d 1205, 1209 (La. 1991)).

[73] *White*, 585 So. 2d at 1209.

[74] *White v. Monsanto Co.*, 585 So. 2d 1205 (La. 1991).

[75] Exhibit G (Plaintiff's deposition) at 132.

[76] *Id.*

conceded Nurse McKinley took his blood pressure during this examination.[77] Nurse McKinley took his pulse during this examination.[78] She took his respiratory rate, as well as his blood oxygen saturation.[79] Plaintiff testified he was physically examined during this visit and that Nurse McKinley performed it manually, laying hands upon him in order to evaluate his condition.[80] Nurse McKinley made a specific observation as to the warmth and color of Plaintiff's skin during this visit.[81] Finally, Plaintiff agreed that Nurse McKinley advised him to return to sick call if he ever had other issues.[82] The unanimous determination by the physicians serving on the Medical Review Panel show that there were no negligence or intentional tort claims arising out of Nurse McKinley's examination and evaluation of Plaintiff following his alleged ingestion of rodent waste.

### iv. The Medical Review Panel's Report should guide this Court in evaluating Plaintiff's medical care.

The Fifth Circuit and its courts recognize the comprehensive nature of Louisiana's medical malpractice statute, La. Rev. Stat. 9:2794, and the need to apply it to such cases. In doing so, courts follow the Fifth Circuit's guidance in *Woods v. Holy Cross Hospital*.[83] The *Woods* court held, because a state's public policy regarding malpractice evidence was so strong, a federal court should apply it as substantive law in diversity, stating it would "do grave damage" to not apply the state

---

[77] *Id.*

[78] *Id.* at 133.

[79] *Id.*

[80] *Id.*

[81] *Id.* at 134.

[82] *Id.*

[83] 591 F. 2d 1164 (5th Cir. 1979).

legislature's decision.[84] Similarly, the Fifth Circuit in *Cleveland ex rel. Cleveland v. United States*,

held the trial court properly applied it in a Federal Tort Claims Act case, excluding an expert for

failing the specialty provision of La. R.S. 9:2794.[85] There, as here, the federal cause of action was

derivative of the state claims for an alleged breach of the standard of care. The Western District of

Louisiana, in *Dade v. Clayton,* held that the state's malpractice evidentiary law was "so intwined"

with the state's substantive malpractice law that it must be applied.[86] Thus, this Court should be

guided by the medical experts, who reviewed Plaintiff's treatment and unanimously concluded

that it was within the standard of care, and dismiss Plaintiff's claims with prejudice.

**B. Plaintiff's claims fail as a matter of law because he cannot prove damages:**

**i.      Plaintiff cannot establish medical causation for his alleged injuries
without an expert.**

The plaintiff bears the burden of proving the causal relationship between the injury

sustained and the incident that caused the alleged injury.[87] The plaintiff must prove causation by

a preponderance of the evidence.[88] Expert testimony is required to prove causation when the facts

and complaints involve issues that are complicated and are not matters of common knowledge.[89]

Stated another way, "[w]hen medical causation cannot be presumed and a finding of causation 'is

---

[84] *Id.* at 1169.

[85] 457 F. 3d 397, 403 (5th Cir. 2006).

[86] 2013 WL 6145710 at *2 (W.D. La. May 10, 2013) (Hayes, M.J.); *see also Paz v. Our Lady of Lourdes Med. Ctr.*, 2005 WL 6201454 (W.D. La. Feb. 28, 2005) (Haik, C.J.) *see also Pride Centric Res., Inc. v. LaPorte,* 2021 WL 4477004 (E.D. La. Sept. 30, 2021) (Vitter, J.) (holding that identical language, in the context of alleged accounting malpractice, must be applied in federal court).

[87] *Lewis v. State through Department of Transportation and Development,* 654 So. 2d 311,313 (La. 1995); *See also Jones v. Peyton Place, Inc.,* 675 So.2d 754, 763, (La.App. 4 Cir. 1996).

[88] *Id.*

[89] Lasseigne v. Taco Bell Corp., 202 F.Supp.2d 512, 524 (E.D. La. 2002), *citing, Pfiffner v. Correa*, 643 So.2d 1228, 1234-1235 (La. 1994)); *see also Lasha v. Olin Corp.*, 625 So.2d 1002, 1005 (La. 1993); See also, *Hutchinson v. Shah,* 648 So.2d 451, 452 (La. App. 1 Cir. 1994).

not one within common knowledge,' expert medical testimony is required."[90] This is especially true for neurological issues.[91]

In *Sinegal v. PNK (Lake Charles), LLC* the court addressed a motion seeking to preclude Plaintiff from recovering for a series of injuries resulting from a fall including "seizures, spinal injuries resulting in emergency surgery, and carpal tunnel syndrome"[92] because he had no expert to opine on causation. The *Sinegal* court recognized:

> [W]hen the conclusion regarding medical causation is not one within common knowledge, expert medical testimony is required to prove causation. *Lassiegne v. Taco Bell Corp.*, 202 F.Supp.2d 512, 524 (E.D. La. 2002). This is especially true for neurological issues. *Id.*; *see also Rodgers v. Hopkins Enterps. of Ms., LLC*, 2018 WL 3104288, at *5 (E.D. La. June 21, 2018) (spinal injuries requiring surgery are complex medical diagnoses requiring expert opinions); *Carmona v. Forrest*, 2023 WL 4317036, at *5 (S.D. Tex. June 15, 2023), report and recommendation adopted, 2023 WL 4317184 (S.D. Tex. June 30, 2023) (expert testimony required to prove causation of spinal injury); *Frost v. Carter*, 140 So.3d 59, 67 (La. Ct. App. 4th Cir. 2014) (expert testimony needed to prove causation for carpal tunnel symptoms requiring surgery). [93]

Thus, the *Sinegal* court held the plaintiff "was precluded from recovering based on any expenses, pain, suffering, limitations, or loss of enjoyment of life allegedly resulting from these conditions."[94]

---

[90] *Jacobe v. Gonzalez,* 2021 WL 2142359 at *2 (W.D. 2021), *citing*, *Lasseigne*, 202 F.Supp.2d at 524; Pfiffner, 643 So.2d at 1234.

[91] *See Sinegal v. PNK (Lake Charles) LLC*, 2024 WL 1159305 at *3 (W.D. La. 2024), citing, *Rodgers v. Hopkins Enterps. of Ms., LLC*, 2018 WL 3104288, at *5 (E.D. La. June 21, 2018) (spinal injuries requiring surgery are complex medical diagnoses requiring expert opinions); *Carmona v. Forrest*, 2023 WL 4317036, at *5 (S.D. Tex. June 15, 2023), *report and recommendation adopted,* 2023 WL 4317184 (S.D. Tex. June 30, 2023) (expert testimony required to prove causation of spinal injury); *Frost v. Carter*, 140 So.3d 59, 67 (La. Ct. App. 4th Cir. 2014) (expert testimony needed to prove causation for carpal tunnel symptoms requiring surgery).

[92] *Sinegal*, 2024 WL 1159305 at *3.
[93] *Sinegal*, 2024 WL 1159305 at *3.

[94] *Sinegal*, 2024 WL 1159305 at *3.

Similarly, in *Jacobe v. Gonzalez,* the court dismissed Plaintiff's claims for failing to have an expert who could opine on medical causation reasoning:

The Court agrees with the Defendants that a medical event such as a heart attack is beyond the common knowledge of a lay person and requires expert testimony. The Defendants provide testimony from Dr. James Smith, treating physician for Plaintiff's 2019 attack, who stated that he found it "not likely" that the accident was the cause of Plaintiff's heart attack. Record Document 21-4 at 32. Yet, Plaintiff has not even offered the name of a medical expert to opine on and support a claim of medical causation. All Plaintiff has offered to fulfill his burden of proof are his deposition statements explaining "[h]ad I not had that accident, had I been able to continue to work out, had I maintained my diet[,] would I have had that heart attack on June 15th? I don't think so." Record Document 21-3 at 82. What's more, because the deadline has passed to present experts and expert testimony, Plaintiff will not be offering any expert evidence to counter the Defendants' argument negating causation.

Plaintiff is not able to meet his burden of proving the medical causation between the accident and his heart attack, and, as result, the Defendants' Motion for Partial Summary Judgment is **GRANTED**.[95]

Here Plaintiff had pre-existing issues in regards to a prior spine surgery.[96] Additionally, he was involved in several unrelated incidents where inmates kicked him in the head,[97] he was punched in the face by an inmate,[98] he had a fall at Stone County where he injured his left elbow,[99] claimed nerve damage in his arm while incarcerated at Stone County,[100] claimed emotional/mental

---

[95] *Jacobe,* 2021 WL 2142359 at *2

[96] Exhibit E  (08/12/11 Operative Note); Exhibit F (05/22/12 Note); Exhibit G at  49 (Plaintiff deposition).

[97] Exhibit G at p. 271-272 (01/05/26 Plaintiff Deposition); Exhibit H at 1, 70-71 (05/21/25 Plaintiff Deposition); Exhibit I (11/29/23 UMC Record).

[98] Exhibit G at 110 (01/05/26 Plaintiff Deposition); Exhibit I (11/29/23 UMC Record).

[99] Exhibit F (Stone County Medical Record).

[100] Exhibit G at 256 (01/05/26 Plaintiff Deposition).

anguish damages as a result of his incarceration at Stone County,[101] and he claimed due to the medical indifference at Stone County his neck, back and leg conditions were aggravated or made worse.[102] In light of the above history, Plaintiff cannot establish medical causation regarding any physical injuries or mental issues without an expert, which he does not have. Therefore, this Court should follow the rulings in *Sinegal* and *Jacobe* and dismiss Plaintiff's injury and mental anguish/emotional distress claims.

### ii.    Plaintiff cannot establish lost wages:

A Plaintiff may not, when the "the only support for plaintiff's claim for lost wages is her own self-serving testimony, without corroboration by any other source, this alone cannot serve as the basis for such an award."[103] Here Plaintiff has no corroborative evidence to support a lost wage claim other than his self-serving testimony as he has not filed a witness or exhibit list listing any such corroborative evidence. Therefore, his lost wage claim should be dismissed with prejudice.

"To obtain an award for future loss of earning capacity, a plaintiff must present medical evidence that indicates with reasonable certainty that a residual disability causally related to the accident exists."[104] Additionally, "future loss of earnings, although inherently speculative, must be proven with a reasonable degree of certainty, and purely conjectural or uncertain future loss of earnings will not be allowed."[105] Here Plaintiff has no medical experts to testify regarding a residual disability that is casually related to this incident; thus, his future loss of earnings claim should be dismissed with prejudice.

---

[101] Exhibit G at 252 (01/05/26 Plaintiff Deposition).

[102] Exhibit G at 250-251 (01/05/26 Plaintiff Deposition).

[103] *Bennet v. Stribling*, 96-1012 (La. App. 1 Cir. 03/27/97), 694 So.2d 991, 993, *quoting*, *Miller v. Mafouz*, 563 So.2d 1223, 1226 (La. App. 1 Cir. 1990), writ denied, 569 So.2d 967 (La. 1990).

[104] *Williams v. State Farm Mut. Auto. Ins. Co.*, 20-248 (La. App. 5 Cir. 02/17/21), 314 So.3d 1010, 1022
[105] *Williams*, 314 So.3d at 1022.

### III. CONCLUSION

Defendants' Motion for Summary Judgment should be granted, as there is no genuine issue of material facts to any of claim asserted against CorrectHealth Jefferson LLC, Juanita Alexander-Sallier, PA, Dr. Phillip Nowlin, and Clara McKinley, LPN, and they are so entitled to judgment as a matter of law. Plaintiff failed to present any evidence to support his claim of intentional infliction of emotional distress, violations of the Americans with Disabilities Act or the Rehabilitation Act, or deliberate indifference under §1983. Plaintiff failed to present any expert testimony in support of his allegations of improper treatment and the Medical Review Panel's unanimous conclusion is unrebutted. Therefore, this Court should grant Defendants' Motion for Summary Judgment and dismiss Plaintiff's claims against them with prejudice.

**WHEREFORE**, Defendants, CorrectHealth Jefferson, LLC, Juanita Sallier-Alexander, PA, Dr. Phillip Nowlin, and Clara McKinley, LPN, respectfully pray that this Court grant their Motion for Summary Judgment and dismiss all of Plaintiff's claims against them with prejudice.

Respectfully Submitted,

*/s/ Kyle P. Kirsch*
KYLE P. KIRSCH (Bar #26363)
NOAH C. ORMOND (Bar #41888)
SAMUEL J. PETERSON (Bar #41895)
**WANEK KIRSCH LLC**
1340 Poydras Street, Suite 2000
New Orleans, LA 70112
Telephone: (504) 324-6493
Facsimile: (504) 324-6626
Email: kkirsch@wanekkirsch.com
        normond@wanekkirsch.com
        speterson@wanekkirsch.com
*Attorneys     for     Defendants,*
*CorrectHealth   Jefferson,   LLC,   Juanita*
*Sellier-Alexander,   Phillip   Nowlin,   and*
*Clara McKinley*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served on all parties via the court's electronic filing system and mailed to Plaintiff this 3rd day of March, 2026.

_____*Kyle P. Kirsch*_____