**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **STEVEN JAY SENCIAL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-3351** |
| **JOSEPH LOPINTO III, ET AL.** | **SECTION: (4)** |

## ORDER AND REASONS

Before the Court, on consent of the parties under the authority of 28 U.S.C. § 636(c), is a

**Motion for Summary Judgment (ECF No. 76)** filed by defendants CorrectHealth Jefferson LLC,

Dr. Juanita Alexander-Sallier, Dr. Philip W. Nowlin, and Clara McKinley, LPN ("Defendants")

through counsel. Plaintiff Steven Jay Sencial ("Sencial") filed an opposition to the motion. ECF

No. 83. Neither party requested oral argument in accordance with Local Rule 78.1 and the Court

agrees that oral argument is unnecessary.

## I.     Factual and Procedural Background

Sencial was a pretrial detainee housed in the Jefferson Parish Correctional Center

("JPCC") when he filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983.

ECF No. 1, ¶I(A), at 2; *id*., ¶III, at 4. Sencial named as defendants Jefferson Parish Sheriff Joseph

Lopinto III, in his individual and official capacities, CorrectHealth Jefferson, LLC

("CorrectHealth"), and Deputy Jody Lee Banks, Deputy L. Preatto, Dr. Juanita Alexander-Sallier,

Dr. Phillip W. Nowlin, Clara McKinley, LPN, Dr. Lumbar, Sgt. Steven Rabb, and Deputy Kevin

Smith[1], each in an individual capacity, challenging the length and conditions of his confinement,

---

[1] Sencial voluntarily dismissed defendants Smith and Rabb. *See* ECF No. 16.

as well as the alleged use of excessive force and adequacy of the medical care received at JPCC. *Id*., ¶I(B), at 2; *id*., ¶III, at 4.

The undersigned Magistrate Judge conducted its frivolousness review and, on April 15, 2024, issued an extensive Partial Report and Recommendation. ECF No. 18. In the Partial Report, the Court outlined the only two remaining claims asserted in Sencial's complaint as follows and as relevant to this Motion and the moving defendants:

**B.    Incident No. 1 – Medical Care for Ongoing Ailments in June, 2022**

Sencial alleges that on June 22, 2022, he was found unconscious on the floor of his cell and brought to medical and put in cell 2MI. Sencial alleges that he was not provided medical treatment for his injury. Instead, Sencial alleges that the nurses put him on tuberculosis confinement and isolated him in cell MI8 for one month, where he was denied access to daily showers. Sencial asserts that the x-ray for his injury was delayed 15 days because he was in solitary confinement, with no way to communicate with the outside per the instructions of Drs. Alexander-Sallier and Nowlin. Sencial claims that this also led to the loss of his personal property and pets when he could not make calls to arrange his personal matters. *Id*., ¶5, at 6.

Sencial further claims that on June 23, 2022, he attempted suicide due to his circumstances and encouragement by nurses and deputies. *Id*., ¶6, at 7. Sencial alleges that this caused him to lose "over 80,000 in equity and extreme emotional distress." *Id*. He also claims that the doctors at the jail failed to document his long-term disabilities of anterior cervical discectomy and fusion ("ACDF") in his cervical spine, a gunshot wound to his left thigh, a dog bite to his right arm, and resulting loss of strength and feeling in his limbs. *Id*. at ¶8. Sencial alleges that as a result, he needs help with daily tasks like climbing, showering, and sleeping because of nerve pain.

Sencial asserts that the doctors failed to document his disabilities, causing wanton infliction of pain for more than one year. Sencial claims that he made multiple requests for a lower bunk, seats for showers, a knee brace, and pain medication to no avail. Sencial asserts that the failure to provide these caused him additional injuries from a fall in the shower, fall off a top bunk, and hopping around the jail on one leg. He claims that all of this was deliberate indifference, inadequate medical care, and violations of "ADA" (presumably the Americans with Disabilities Act") by Drs. Alexander-Sallier and Nowlin. *Id*. at ¶9; *Id*. at 11.

[. . .]

**D.    Incident No. 3 – Medical Care After Ingesting Rat Feces**

Sencial alleges that on October 31, 2022, he was taken off suicide watch and placed in a suicide watch holding cell. *Id*., ¶13, at 9. Sencial asserts that he

was given commissary items from a storage area that was infested with mice. Sencial claims that when eating the items, he ingested mice droppings and food covered in mice urine.  He claims that he became ill and reported it to deputies and nurses.  He alleges that his face went numb but he was denied poison control or treatment by Nurse McKinley.  He claims that the nurse told him to get treated by a doctor when he was released.   He also asserts that this mistreatment by CorrectHealth nurses led to acute reactions, breathing problems, blackouts, and loss of enjoyment of life because his tongue lost sensation.

Sencial further claims that Cell 4DR was infested with mice, and that this caused more reactions, swelling in face and eyes, and blackouts while in Cell 10. He alleges that Sheriff Lopinto failed to control the mice infestation in the jail.  He claims that mice were in his bedding and have bitten and scratched him, causing him to go into shock.  He also claims that he has been on medication as a result for six months.

Sencial alleges that Nurse McKinley failed to provide adequate medical care and that Sheriff Lopinto failed to maintain the jail facility through failure to address the rodent issue.  *Id*. at 12.

ECF No. 18, ¶I(B), at 3-4; *id*., ¶I(D), at 5-6.

After applying the relevant law and standards of review to the facts alleged in Incident Nos.

1 and 3, the only claims remaining after the frivolousness review against the moving defendants

were as follows:

1.      Sencial's § 1983 medical indifference and violation of ADA claims under Incident One against Dr. Alexander-Sallier and Dr. Nowlin arising from their alleged failure to recognize and provide him with treatment for pain and other side-effects from his listed chronic pre-existing conditions which have resulted in injury including unnecessary long-term pain and repeated difficulties in performing basic life tasks and which prevented him from receiving needed accommodations from the jail.

2.      Sencial's § 1983 medical indifference claims against Nurse McKinley under Incident Three arising from her alleged failure to adequately treat him for a reaction after ingesting rat excrement.

3.      Sencial's state law claims of malpractice, negligence, and intentional infliction of emotional distress, against Dr. Alexander-Sallier, Dr. Nowlin, and Nurse McKinley, and his state law *respondeat superior* liability claims against CorrectHealth arising from the actions and inactions of its employees, Drs. Nowlin and Alexander-Sallier and Nurse McKinley, in connection with Incidents One and Three.

ECF No. 45 at 10-11. These findings and the recommendations in the Partial Report and Recommendation were adopted by the District Judge as the opinion of the Court on May 9, 2024. ECF No. 20.

On October 15, 2024, Defendants filed a motion to dismiss for failure to state a claim. ECF No. 40. The Court interpreted Defendants motion to include requests to dismiss (1) the ADA claims asserted in Incident One against Drs. Nowlin and Alexander-Sallier for being brought against individuals and not an entity, and for otherwise lacking merit, (2) the inadequate medical care claim in Incident Three against Nurse McKinley because Sencial fails to allege that he received inadequate medical care and only disagrees with the treatment he received; and (3) the state law medical malpractice and negligence claims under Incident One against Drs. Nowlin and Alexander-Sallier and Incident Three against Nurse McKinley, and related *respondeat superior* claims against CorrectHealth as premature. ECF No. 45 at 11.

Following the review of Defendants' motion, the undersigned issued a Report and Recommendation recommending that Defendants' motion be granted in part to dismiss with prejudice Sencial's ADA and RA claims against Dr. Nowlin and Dr. Alexander-Sallier in their individual capacities, and to dismiss without prejudice Sencial's state law claims of malpractice and negligence urged against Dr. Nowlin, Dr. Alexander-Sallier, and Nurse McKinley and the related *respondeat superior* claims against CorrectHealth as premature. ECF No. 45 at 19-20. Further, it was recommended that the motion be denied in part as to Sencial's claims of medical indifference against Nurse McKinley and state law intentional tort claims against Dr. Nowlin, Dr. Alexander-Sallier, Nurse McKinley, and related *respondeat superior* claims against CorrectHealth.

These findings and recommendations in the Report and Recommendation were adopted by the District Judge on April 17, 2025.  ECF No. 47. Based on Sencial's objection to the Report and Recommendation, the District Judge ordered that Sencial be allowed to amend his complaint only for the purpose of naming Drs. Nowlin and Alexander-Sallier in their official capacities with respect to his ADA and RA claims. *Id*. at 5. On April 28, 2025, Sencial filed an amended complaint naming Drs. Nowlin and Alexander-Sallier in their official capacities for his ADA and RA claims.

At this juncture, the only claims remaining as related this motion for summary judgment and the moving defendants are Sencial's § 1983 medical indifference claims and Sencial's violation of ADA and RA claims in their official capacities under Incident One against Dr. Alexander-Sallier and Dr. Nowlin, Sencial's § 1983 medical indifference claims against Nurse McKinley for Incident Three, and Sencial's related state law intentional tort claims against Dr. Nowlin, Dr. Alexander-Sallier, Nurse McKinley, and related *respondeat superior* claims against CorrectHealth.

### a. **Defendants' Motion for Summary Judgment (ECF No. 76)**

Defendants Dr. Alexander-Sallier, Dr. Nowlin, Nurse McKinley, and CorrectHealth moved for summary judgment dismissal of Sencial's § 1983 medical indifference and related state law intentional tort claims against Dr. Alexander-Sallier, Dr. Nowlin, and Nurse McKinley, Sencial's ADA and RA claims against Drs. Alexander-Sallier and Nowlin in their official capacities, and Sencial's related state law *respondeat superior* claims against CorrectHealth. ECF No. 76-2, ¶I, at 3.

In their supporting memorandum, as to Sencial's ADA and RA claims, Defendants state that they are entitled to summary judgment as private entities and their employees are not subject to suit under the ADA, Sencial failed to prove federal funding under the RA, mere disagreements

with medical care do not constitute violations of the ADA and RA, and because the Medical Review Panel is unrebutted evidence that Sencial cannot prove a violation of the ADA or RA. *Id*. at 6, 8, 9. Second, Defendants state they are entitled to summary judgment on Sencial's § 1983 medical indifference clams against Dr. Alexander-Sallier, Dr. Nowlin, and Nurse McKinley because there is no evidence of deliberate indifference. *Id*. at 12. Defendants argue that the Medical Review Panel's report should guide the Court in evaluating Sencial's medical care. *Id*. at 17. Third, Defendants state they are entitled to summary judgment because Sencial's state law claims fail as a matter of law. *Id*. at 15. Finally, Defendants state they are entitled to summary judgment because Sencial cannot prove damages or establish lost wages. *Id*. at 18, 21.

In their statement of uncontested facts, Defendants state that Sencial was incarcerated in JPCC in 2022 and 2023. ECF No. 76-13 at 1. They state that CorrectHealth is a private company contracted by Jefferson Parish to provide medical care to inmates during the relevant time period and employed the Defendants. Defendants assert that Sencial underwent an anterior cervical discectomy and fusion in August 2011 and was looking to return to work by May 2012. *Id*. at 1-2. Defendants note that Sencial's treating neurosurgeon concluded that he was healed from his injury and could return to work. *Id*. at 2. They claim that Sencial returned to work as a plumber in Wisconsin post-surgery and continued to work as a plumber in California following a state licensing exam in 2017.

Defendants state that Sencial was injured when he was kicked in the head by other inmates causing memory loss, eye issues, inability to see, and a TBI. *Id*. Further, Defendants state that Sencial was punched in the face by an inmate. Further, Defendants state that while incarcerated in Stone County, Mississippi, in August 2024 that Sencial reported a fall that caused pain in his left elbow, claimed nerve damage in his arm, and emotional and mental anguish damages as a result

of his incarceration in Stone County. *Id*. at 2-3. Defendants also state that Sencial claimed medical deliberate indifference in Stone County and that his neck, back, and leg conditions were aggravated or made worse.

While he was incarcerated in JPCC, Defendants state that Sencial was examined by Nurse McKinley on November 10, 2022, following his alleged ingestion of rodent waste. *Id*. at 3. This examination included observing Sencial take his medication and drink four ounces of water, taking his blood pressure, respiratory rate, and oxygen saturation as well as a physical manual examination which noted his skin and temperature color.

Defendants also state that Sencial requested a Medical Review Panel involving all his complaints regarding the medical care at issue here. *Id*. Defendants state the medical review panel consisted of three doctors who unanimously determined that Sencial was appropriately evaluated for his complaints, an adequate response was made to all his complaints, and that the response to his complaints met the standard of care.

Further, Defendants state that Sencial has not filed a witness or exhibit list, produced any corroborative evidence supporting his claims, nor provided any expert reports or disclosures supporting his damages claims. *Id*.

In support of these uncontested facts, Defendants provide a copy of Sencial's Medical Review Panel Request, Sencial's submission to the Patient's Compensation Fund, and the Medical Review Panel opinion. *See* ECF No. 76-3 Exh. A (Medical Review Panel Request); ECF No. 76-4 Exh. B (PCF Submission); ECF No. 76-5 Exh. C (Medical Review Panel Opinion). Defendants also provide an operative note from Sencial's surgeon in August 2011, and a May 2012 note regarding his return to work. *See* ECF No. 76-7 Exh. E (Operative Note); ECF No. 76-8 Exh. F (Work Note). Defendants also produce transcripts containing excerpts of Sencial's testimony in

depositions on January 5, 2026, and May 21, 2025. *See* ECF No. 76-9 Exh. G (Deposition Transcript); ECF No. 76-10 Exh. H (Deposition Transcript). Further, Defendants provide medical records from November 2023 and Stone County medical records. *See* ECF No. 76-11 Exh. I (UMC Medical Records); ECF No. 76-12 Exh. J (Stone County Medical Records).

In his opposition to Defendants motion, Sencial states that Defendants assertions are refuted by his allegations of deliberate indifference to his serious medical needs. ECF No. 83 at 1. Further, he states that Exhibit E, the operative note from his surgeon in August 2011, is proof that he had a preexisting condition under the ADA. Sencial also claims that his visit to medical in November 2022 with Nurse McKinley was for a hunger strike and did not pertain to the ingestion of rat feces. Sencial states that as a disabled person he was discriminated against by not receiving proper bedding and a lower bunk which he stated he communicated to Dr. Nowlin and all other medical staff. *Id*. at 2.  Regarding the Medical Review Panel, Sencial states Defendants reliance on the Panel's conclusions should have no weight in this proceeding as it is misleading, biased, and not binding. Finally, Sencial claims that Defendants assertion that he was injured due to an incident while incarcerated in Stone County is flawed, as the claim was negligence from a delay of service for ulnar nerve damage caused by Deputy Wilkie at JPCC that was not treated by CorrectHealth.

## II.      <u>**Standard of Review for Summary Judgment**</u>

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A fact is "material" if resolving that fact

in favor of one party could affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Poole v. City of Shreveport*, 691 F.3d 624, 626-27 (5th Cir. 2012).

Where the moving party bears the burden of proof at trial as the plaintiff, or as a defendant asserting an affirmative defense, that party must support its motion with "credible evidence . . . that would entitle it to directed verdict if not controverted at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). Moreover, in evaluating a motion for summary judgment by the party with the underlying burden of proof, the Court considers the substantive evidentiary burden of proof that would apply at the trial on the merits. *Anderson*, 477 U.S. at 252. In such a case, the moving party must "establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original); *see also Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 378 (5th Cir. 2011). Credible evidence may include depositions, documents, affidavits, stipulations, admissions, interrogatory answers, or other materials. Fed. R. Civ. P. 56(c).

Once the moving party has made its showing, the burden shifts to the non-moving party to produce evidence that demonstrates the existence of a genuine issue of fact. *Engstrom v. First Nat. Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995) (citing *Celotex*, 477 U.S. at 322-24). All justifiable inferences are to be drawn in the non-moving party's favor. *Anderson*, 477 U.S. at 255. However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for Summary Judgment." *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003) (internal citations omitted); *see also Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996) (stating that "mere conclusory allegations" are insufficient to defeat a motion for summary judgment). Although the Court may not evaluate evidence on a motion for summary judgment, the Court may make a determination as to the "caliber or quantity" of evidence as part

of its determination of whether sufficient evidence exists for the fact-finder to find for the non-moving party. *Anderson*, 477 U.S. at 254. "[T]his court construes 'all facts and inferences in the light most favorable to the nonmoving party.'" *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012) (quoting *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010)).

## III.    Discussion

### a.    ADA and RA Claims

Sencial asserts a claim against Drs. Alexander-Sallier and Nowlin in their official capacities for violation of the ADA and RA by failing to document his long-term disabilities of anterior cervical discectomy and fusion ("ACDF") in his cervical spine, a gunshot wound to his left thigh, a dog bite to his right arm, and resulting loss of strength and feeling in his limbs. Sencial claims that he made multiple requests for extra bedding, a lower bunk, seats for showers, a knee brace, and pain medication to no avail.

Under the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A plaintiff must show "(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability." *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011). The elements needed to plead a claim under the RA and the standards governing such claims are "operationally identical" to those required to state a claim under the ADA. *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 676 n.8 (5th Cir. 2004); *see also Sligh v. City of Conroe*, 87 F.4th 290, 304 (5th Cir. 2023).

10

"The only material difference between the two provisions lies in their respective causation requirements." *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005).

To have a qualifying disability, a plaintiff must demonstrate "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Hale*, 642 F.3d at 499-500 (internal quotations omitted). Further, under the ADA, a plaintiff may assert a claim for failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual." 42 U.S.C. § 12112(b)(5)(A).

Defendants state that any ADA claim against Drs. Alexander-Sallier and Nowlin in their official capacities fails as they are employees of CorrectHealth Jefferson LLC, which is a private entity contracted to provide medical services to inmates at JPCC.

The Defendants are correct that Title II, as codified at 42 U.S.C. § 12131(1), prohibits discrimination by "public entities." It is undisputed that state and local prisons fall squarely within this statutory definition. *See Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998).

Given that CorrectHealth Jefferson LLC is a private institution contracted to provide medical services with JPCC, it would appear that CorrectHealth does not qualify as a public entity for purposes of Title II. The Act provides that "[t]he term 'public entity' means-(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority (as defined in section 24102(4) of Title 49)." 42 U.S.C. § 12131(1). CorrectHealth is neither a state or local government, nor a department, agency, or instrumentality of the state.

While the Court was unable to locate any Fifth Circuit precedent on point, other courts have found that private entities contracted to provide medical services within state run entities are not a "public entity" within the meaning of the ADA. *See Morgan v. Mississippi*, No. 07-15, 2009 WL 1609060 at *13 (S.D. Miss. June 8, 2009) (holding that a private independent contractor for medical services with the Mississippi Department of Corrections was not a public entity for purposes of the ADA); *Cox v. Jackson*, 579 F.Supp.2d 831, 852–53 (E.D. Mich. 2008) ("A private contractor does not become a 'public entity' under Title II merely by contracting with a governmental entity to provide governmental services"); *Basat v. Caruso*, No. 07–13332, 2008 WL 4457828, at *15 (E.D. Mich. Sept. 30, 2008) (dismissing plaintiff's ADA claims against a private entity and its independent contractor physicians because they were clearly not public entities). Further, the Fifth Circuit has repeatedly held that a private prison, or a private prison management corporation, is not a "public entity" under the ADA. *See Maringo v. Warden*, 283 F. App'x 205, 206 (5th Cir. 2008) (concluding that Title II is inapplicable to a private prison or its employees); *Edison v. Douberly*, 604 F.3d 1307, 1310 (11th Cir. 2010).

Given that CorrectHealth Jefferson LLC is a private institution contracted to provide medical services with JPCC, defendants Drs. Alexander-Sallier and Nowlin, in their official capacities, are entitled to summary judgment on Sencial's ADA/RA claims.

Further, Defendants state that even if Sencial were able to bring a claim against the Doctors in their official capacities, Sencial's  mere disagreement with his medical care does not constitute a violation of the ADA or RA. Sencial opposes this assertion, stating that as a disabled person he was discriminated against by not receiving proper bedding and a lower bunk which he stated he communicated to Dr. Nowlin and all other medical staff. Additionally, Sencial claims that the

doctors refused to document his disabilities such as his ACDF in his cervical spine, a gunshot wound to his left thigh, and a dog bite to his right arm.

To have a qualifying disability under the ADA, a plaintiff must demonstrate "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Hale v. King*, 642 F.3d 492, 499-500 (5th Cir. 2011) (internal quotations omitted); *Nottingham v. Richardson*, 499 F. App'x 368, 376 (5th Cir. 2012). In support of summary judgment, Defendants submit a note from Sencial's surgeon regarding his ACDF surgery in August 2011. ECF No. 76-8 at 1. In the note, Sencial's surgeon states that, based on his x-rays, it appears he is solidly healed from his injury and may return to work as a plumber. Defendants also submit Sencial's testimony during his January 5, 2026, deposition where Sencial testified that after his surgery he returned to work as a plumber in 2012 as well as in 2017 when he was licensed in California. ECF No. 76-9 at 2-3.

As for Drs. Alexander-Sallier and Nowlin's failure to document Sencial's alleged disabilities, upon review of the medical records submitted by Sencial, it appears that on June 28, 2022, Dr. Nowlin documented that Sencial was seen for neck and back pain as well as a history of a gunshot wound in the pelvis area. ECF No. 12-2 at 6. That same day, Dr. Nowlin ordered an x-ray of Sencial's kidneys, ureters, bladder, chest, pelvis, and cervical spine and marked it as a "1" on a scale of 1-5, meaning it was "high" priority. ECF No. 12-5 at 93. In regard to Dr. Alexander-Sallier, a provider examination sheet from June 29, 2023, indicates that Dr. Alexander-Sallier documented Sencial's history of a gun shot wound to his left thigh in 2018. *Id*. at 8. Further, on a June 1, 2023, provider examination sheet Dr. Alexander-Sallier noted that Sencial presented with complaints of allergies and documented that "he also requests a bottom bunk due to back pain."

13

*Id*. at 84. Under the clinical impressions for that visit, Dr. Alexander-Sallier wrote "Bottom Bunk" and "Refer to Mental Health." *Id*. at 83.

The Fifth Circuit has repeatedly held that "'the 'ADA does *not* set out a standard of care for medical treatment,' and the 'ADA is not violated by a prison's simply failing to attend to the medical needs of its dis-abled prisoners.'" *Parker v. Hooper*, No. 23-30825, 2026 WL 864705, at *17 (5th Cir. Mar. 30, 2026) (quoting *Carter ex rel. Carter v. City of Shreveport*, 144 F.4th 809, 815 (5th Cir. 2025) (emphasis in original) (quoting *Hale v. Harrison Cnty. Bd. of Supervisors*, 8 F.4th 399, 404 n.† (5th Cir. 2021) (per curiam)) (citing *Bell v. State Prison Offs.,* No. 23-30339, 2024 WL 2863293, *6 (5th Cir. June 6, 2024) (per curiam) (unpublished) ("The ADA is a *discrimination* statute, not merely a recourse-for-failure-to-treat statute." (emphasis in original)); *Nottingham v. Richardson*, 499 F. App'x 368, 377 (5th Cir. 2012) ("The ADA is not violated by a prison's simply failing to attend to the medical needs of its disabled prisoners.")). Noting that "even the Supreme Court refused to hold that the ADA imposes a "standard of care" on States." *Id*.; *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 603 n.14, (1999) ("We do not in this opinion hold that the ADA imposes on the States a 'standard of care' for whatever medical services they render, or that the ADA requires States to provide a certain level of benefits to individuals with disabilities." (some internal quotations omitted)).

Further, claims where an inmate was denied bedding accommodations by medical providers for pre-existing health conditions have been found to not constitute a violation of the ADA. *See Barber v. Maoirana*, No. 14-2227, 2015 WL 5562222, at *10 (W.D. La. June 3, 2015) (inmate's claim that medical providers refused to give him an extra mattress for his arthritis was not a violation of the ADA), *R&R adopted*, 2015 WL 5566699, (W.D. La. Sept. 18, 2015).

For these reasons, Sencial cannot state an ADA claim against Drs. Alexander-Sallier and Nowlin as they are employed by CorrectHealth which is a private entity contracted by JPCC and not a public entity for purposes of the ADA. Additionally, Sencial's mere disagreement with the standard of care received and the way doctors documented his alleged disabilities does not create a violation of the ADA/RA. As such, Defendants are entitled to summary judgment on Sencial's ADA/RA claims against Dr. Alexander-Sallier and Dr. Nowlin their official capacities.

### b. Medical Indifference Claims

Defendants state they are entitled to summary judgment on Sencial's medical indifference claims under Incident One against Drs. Alexander-Sallier and Dr. Nowlin arising from their alleged failure to recognize and provide him with treatment for incidents in June 2022 and for pain and other side-effects from his listed chronic pre-existing conditions throughout his time at JPCC. Defendants also state they are entitled to summary judgment on Sencial's medical indifference claims against Nurse McKinley under Incident Three arising from her alleged failure to adequately treat him for a reaction after ingesting rat excrement.

As an initial matter, Defendants state that the Medical Review Panel should guide the Court in reviewing Sencial's medical care claims.  According to the defendants the panel determined that the they did not fail to meet an adequate standard of care for medical malpractice and justifies summary judgment on the issue of deliberate indifference.

However, the Medical Review Panel's findings are not conclusive in disproving Sencial's claims. In fact, under Louisiana law, the panel's opinion is not even dispositive as to whether there was medical malpractice. The Louisiana Supreme Court has explained that although the panel's opinion is "admissible as evidence in any action subsequently brought" in court, the opinion "shall not be conclusive." *McGlothlin v. Christus St. Patrick Hosp.*, No. 10-2775 (La. 7/1/11); 65 So. 3d

1218, 1227. Rather, "as with any expert testimony or evidence, the medical review panel opinion is subject to review and contestation by an opposing viewpoint," and "the jury as trier of fact, is free to accept or reject any portion or all of the opinion." *Id*. at 1227. In addition, Louisiana law permits a party to challenge the board's opinion if its decision was based on its resolution of disputed material facts. *Id*. at 1229-30. Although the panel's opinion may be strong evidence against Plaintiffs' claims to the jury, at the summary judgment stage the Court must "refrain[ ] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

Thus, the Medical Review Panel's finding that Defendants met the standard of care for all of Sencial's complaints while at JPCC is not unrebutted evidence that Defendants were not deliberately indifferent to his medical needs. As such, Defendants are not entitled to summary judgment on these grounds.

Defendants also submit that they are entitled to summary judgment because Defendants were not deliberately indifferent to Sencial's medical needs. Inadequate medical care for purposes of a § 1983 claim occurs only when the conduct amounts to "deliberate indifference to [the prisoner's] serious medical needs" that "constitutes the 'unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). For pretrial detainees, like Sencial, "[t]he Fourteenth Amendment requires that state officials not disregard the 'basic human needs' of pretrial detainees, including medical care." *Reed v. Krajca (Estate of Henson)*, 440 F. App'x 341, 343 (5th Cir. 2011). Under this deliberate indifference standard, a prison official is not liable unless the official knows of and disregards an excessive risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998).

16

Deliberate indifference is manifested in the providers intentional denial of medical care or intentional interference with the treatment once prescribed. *Farmer*, 511 U.S. at 847. To state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend "evolving standards of decency." *Id*. Thus, mere disagreement with medical treatment is insufficient to state a claim of deliberate indifference. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). The Fifth Circuit has repeatedly noted that deliberate indifference is an extremely high standard to meet. *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). The standard is so high that the Fifth Circuit recently noted, "In essence, when prison officials have attempted to care for a prisoner's medical needs, even if the care falls short, they have not exhibited subjective deliberate indifference." *Parker v. Hooper*, No. 23-30825, 2026 WL 864705, at *13 (5th Cir. Mar. 30, 2026). Further, "disagreements over medical judgment or isolated negligence may constitute medical malpractice but do not rise to the level of quasi-criminal deliberate indifference." *Id*. at *16 (citing *Gamble*, 429 U.S. at 106; *Williams v. Hampton*, 797 F.3d 276, 281 (5th Cir. 2015); *Domino*, 239 F.3d at 756).

### a. <u>Drs. Alexander-Sallier and Nowlin</u>

Sencial claims that Drs. Alexander-Sallier and Nowlin were deliberately indifferent to his serious medical needs arising from their alleged failure to recognize and provide him with treatment for incidents in June 2022 and for pain and other side-effects from his listed chronic pre-existing conditions throughout his time at JPCC. Specifically, Sencial claims that on June 22, 2022, he was found unconscious on the floor of his cell and brought to medical and put in cell 2MI. Sencial asserts that the x-ray for his injury was delayed 15 days because he was in solitary confinement, with no way to communicate with the outside per the instructions of Drs. Alexander-

Sallier and Nowlin. He also claims that the doctors at the jail failed to document his long-term disabilities of anterior cervical discectomy and fusion ("ACDF") in his cervical spine, a gunshot wound to his left thigh, a dog bite to his right arm. Sencial asserts that the doctors failed to document his disabilities, causing wanton infliction of pain for more than one year. Sencial claims that he made multiple requests for a lower bunk, seats for showers, a knee brace, and pain medication to no avail.

Sencial claims that, while housed in medical, his x-rays were delayed and he had no way to communicate with the outside world per the instructions of Drs. Alexander-Sallier and Nowlin. Upon review of the record, on June 21, 2022, Dr. Alexander-Sallier documented that Sencial must get a chest x-ray and noted; "Please ensure patient gets chest x-ray this week." ECF No. 12-2 at 3. On June 27, 2022, Dr. Nowlin documented that Sencial was ordered to have a chest x-ray, but that Sencial refused the chest x-ray. *Id*. at 4. In the same entry, Dr. Nowlin also documented that "he knows he needs chest x-ray to get out of medical." The next day, on June 28, 2022, Dr. Nowlin documented that Sencial was seen for neck and back pain as well as a history of a gunshot wound in the pelvis area. *Id*. at 6. Dr. Nowlin then ordered an x-ray of Sencial's kidneys, ureters, bladder, chest, pelvis, and cervical spine and marked it as a "1" on a scale of 1-5, meaning it was "high" priority. ECF No. 12-5 at 93.

Sencial also claims that the Doctors' failure to document his disabilities caused wanton infliction of pain for more than one year. As previously mentioned, on June 28, 2022, Dr. Nowlin documented that Sencial was seen for neck and back pain as well as a history of a gunshot wound in the pelvis area. ECF No. 12-2 at 6. In regard to Dr. Alexander-Sallier, a provider examination sheet from June 29, 2023, indicates that Dr. Alexander-Sallier documented Sencial's history of a gunshot wound to his left thigh in 2018. ECF No. 12-5 at 8. Further, on June 1, 2023, provider

18

examination sheet Dr. Alexander-Sallier noted that Sencial presented with complaints of allergies and documented that "he also requests a bottom bunk due to back pain." *Id*. at 84. Under the clinical impressions for that visit, Dr. Alexander-Sallier wrote "Bottom Bunk" and "Refer to Mental Health." *Id*. at 83.

Additionally, the record reveals numerous instances where Sencial was seen by providers or given medical care while at JPCC. Sencial was booked into JPCC on May 23, 2022. ECF No. 12-3 at 39. At minimum, records indicate that Sencial was admitted to JPCC's infirmary four times during his time at JPCC. In addition to his time in the infirmary, records indicate that between May 23, 2022, and March 30, 2023, Sencial was seen or treated by a medical provider at least 60 times. *Id*.

As stated above, mere disagreement with medical treatment is insufficient to state a claim of deliberate indifference. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). "In essence, when prison officials have attempted to care for a prisoner's medical needs, even if the care falls short, they have not exhibited subjective deliberate indifference." *Parker v. Hooper*, No. 23-30825, 2026 WL 864705, at *13 (5th Cir. Mar. 30, 2026). Further, prison medical providers' denial of certain care requests, such as specific bedding related to preexisting health conditions, has not been found to rise to the level of deliberate indifference. *See Davis v. Young*, 624 F. App'x 203, 206 (5th Cir. 2015) (holding that a nurses refusal to give an inmate an extra mattress and pillow does not rise to the level of a constitutional violation); *Barber v. Maoirana*, No. 14-2227, 2015 WL 5562222, at *10 (W.D. La. June 3, 2015) (no finding of deliberate indifference where medical providers refused to give an inmate an extra mattress for his arthritis), *R&R adopted*, 2015 WL 5566699, (W.D. La. Sept. 18, 2015).

The record indicates that Sencial was seen by providers numerous times and that both doctors documented Sencial's complaints and past conditions, ordered various treatment, and documented his requests for specific accommodation. As such, Defendants' conduct did not rise to deliberate indifference for failure to treat or respond to Sencial's serious medical needs. Thus, Drs. Alexander-Sallier and Nowlin are entitled to summary judgment on Sencial's medical indifference claims as they relate to Incident One.

### b. Nurse McKinley

Defendants state they are entitled to summary judgment on Sencial's medical indifference claims against Nurse McKinley under Incident Three arising from her alleged failure to adequately treat him for a reaction after ingesting rat excrement.

In support of their motion, Defendants submit a deposition transcript from January, 5, 2026, where Sencial testifies about the care received by Nurse McKinley. ECF No. 76-6 Exh. G at 5. During the deposition, Sencial testified that when he was seen by Nurse McKinley, she made sure he could swallow water, noted he was not drooling and was able to take medication, took his blood pressure, took his temperature, took his pulse, record his respiratory rate, oxygen stats, and noted that his skin was pink and warm. *Id*. at 5-7. Sencial testified that Nurse McKinley also entered a disposition that told him to return to sick call if he had any more issues. *Id*. at 7. Further, Sencial testified that he saw Dr. Azikiwe after that visit and was prescribed allergy medicine.

Sencial's deposition testimony is corroborated by his medical records pertaining to his visit with Nurse McKinley on November 11, 2022. ECF No. 12-5 at 96. Under chief complaint, Nurse McKinley documented that Sencial was complaining of rat poison and how his tongue and bottom lip were swollen. Further, Nurse McKinley documented that Sencial's blood pressure was 140/95, his temperature was 97.3 degrees, his pulse rate was 94, his respiratory rate was 20, and his oxygen

saturation was 99%. The record also states for him to return to sick call if his condition persists or worsens. *Id*. at 97.

As outlined above, mere disagreement with treatment is insufficient to state a claim of deliberate indifference. Nurse McKinley documented Sencial's complaints, took his vitals, and told him to return to sick call if his condition persisted or worsened. Further, Sencial testified that he saw a doctor after that visit and was provided allergy medicine. Thus, any failure by Nurse McKinley to adequately treat Sencial in relation to Incident Three does not rise to the level of a constitutional violation and, therefore, Nurse McKinley is entitled to summary judgment on Sencial's medical indifference claims.

c. **State Law Claims**

Sencial also asserts state law intentional tort claims against Dr. Nowlin, Dr. Alexander-Sallier, Nurse McKinley, and related *respondeat superior* claims against CorrectHealth.

Pursuant to 28 U.S.C. § 1367(a), in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  This jurisdiction is "a doctrine of discretion," and in so deciding, courts consider "judicial economy, convenience and fairness to litigants," as well as whether "the state issues substantially predominate."  *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726-27 (1966).  Ultimately, "[a] district court has 'wide discretion' in deciding whether it should retain jurisdiction over state law claims once all federal claims have been eliminated." *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 161 (5th Cir. 2011) (citing *Guzzino v. Felterman*, 191 F.3d 588, 595 (5th Cir. 1999)).

The Fifth Circuit recognizes that its "general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed." *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992) (citing *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989)); *see Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 351 (1988) (when the federal claims are eliminated at an "early stage" of the litigation the district court has "a powerful reason to choose not to continue to exercise jurisdiction"); *Gibbs*, 383 U.S. at 726 ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

For the reasons outlined above, all of Sencial's § 1983 medical indifference and ADA/RA claims involving Dr. Alexander-Sallier, Dr. Nowlin, and Nurse McKinley may be dismissed. Under the provisions of § 1367(c), and balancing the relevant factors of judicial economy, convenience, fairness and comity, the Court declines to exercise supplemental jurisdiction and dismisses without prejudice Sencial's state law intentional tort claims against Dr. Nowlin, Dr. Alexander-Sallier, Nurse McKinley, and related *respondeat superior* claims against CorrectHealth.

Accordingly,

**IT IS ORDERED** that defendants CorrectHealth Jefferson LLC, Dr. Juanita Alexander-Sallier, Dr. Philip W. Nowlin, and Clara McKinley, LPN's **Motion for Summary Judgment (ECF No. 76)** is **GRANTED** and that Sencial's § 1983 medical indifference claims against Dr. Nowlin. Dr. Alexander-Sallier, and Nurse McKinley and ADA/RA claims against Dr. Nowlin and Dr. Alexander-Sallier in their official capacities are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Sencial's related state law intentional tort claims against Dr. Nowlin, Dr. Alexander-Sallier, Nurse McKinley, and related *respondeat superior*

claims against CorrectHealth are **DISMISSED WITHOUT PREJUDICE** because the Court declines to exercise supplemental jurisdiction.

 **IT IS FURTHER ORDERED** that, in light of summary judgment, Defendants' pending **Motion in Limine (ECF No. 91)** is **DENIED WITHOUT PREJUDICE** as **MOOT**.

 New Orleans, Louisiana, this ___14th___ day of April, 2026.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**
