**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **STEVEN JAY SENCIAL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-3351** |
| **JOSEPH LOPINTO III, ET AL.** | **SECTION: (4)** |

### ORDER AND REASONS

Before the Court, on consent of the parties under the authority of 28 U.S.C. § 636(c), is a **Motion for Summary Judgment (ECF No. 77)** filed by defendants Deputy Jody Lee Banks and Sheriff Joseph Lopinto III ("Defendants") through counsel. Plaintiff Steven Jay Sencial ("Sencial") filed an opposition to the motion. ECF No. 84. Neither party requested oral argument in accordance with Local Rule 78.1 and the Court agrees that oral argument is unnecessary.

## I.      Factual and Procedural Background

Sencial was a pretrial detainee housed in the Jefferson Parish Correctional Center ("JPCC") when he filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983. ECF No. 1, ¶I(A), at 2; *id*., ¶III, at 4. Sencial named as defendants Jefferson Parish Sheriff Joseph Lopinto III, in his individual and official capacities, CorrectHealth Jefferson, LLC ("CorrectHealth"), and Deputy Jody Lee Banks, Deputy L. Preatto, Dr. Juanita Alexander-Sallier, Dr. Phillip W. Nowlin, Clara McKinley, LPN, Dr. Lumbar, Sgt. Steven Rabb, and Deputy Kevin Smith[1], each in an individual capacity, challenging the length and conditions of his confinement, as well as the alleged use of excessive force and adequacy of the medical care received at JPCC. *Id*., ¶I(B), at 2; *id*., ¶III, at 4.

---

[1] Sencial voluntarily dismissed defendants Smith and Rabb. *See* ECF No. 16.

Sencial alleges that, on September 1, 2022, he was attacked by another inmate while housed in cell M13.  He claims that, as a result, he lost vision in his left eye for one month and began having migraines and hearing loss. ECF No. 6-1, ¶10, at 8. Sencial claims that on or about September 21, 2022, Deputy Jesse brought him to the medical unit for his complaints.  Upon arriving, Deputy Banks intervened in triage and said plaintiff could not write to medical or grieve about the M13 fight, and that Sencial was premature in seeking medical attention.  Sencial claims that Deputy Banks then dragged him through the jail back to the dorm with disregard to any excessive risk to his health and safety.  Sencial claims that this also led to further injury and denial of medical care by Nurse McKinley.  Sencial further states that he wrote a grievance complaint and went on an eight-day hunger strike and was still denied medical care.

Sencial acknowledges that he eventually saw Dr. Lumbar on October 24, 2022, a month and a half later, for his injuries from the M13 fight.  *Id.* at ¶11.  He claims, however, that the doctor did not document the visit which further delayed treatment for his injuries.  He claims that he filed grievance complaints for more than 8 months but still did not get treatment because of the negligence by the CorrectHealth staff and doctors.  He further claims that, as a result, he has had loss of vision, loss of hearing, pain, migraines, and dizziness with chronic substantial pain which effects his daily activities.  *Id.*, ¶12, at 9.

Sencial alleges that Deputy Banks, Nurse McKinley, and Dr. Lumbar failed to provide adequate medical care and instead delayed, interrupted, and stopped treatment. *Id.* at 11. He further claims that Sheriff Lopinto is liable under the doctrine of *respondeat superior* for the actions of his employees. *Id.* at ¶20.

After conducting the statutory frivolousness review and issuing an extensive Report and Recommendation, the undersigned found that Sencial's claims regarding the September 1, 2022, incidents against Sheriff Lopinto, Nurse McKinley, and Dr. Lumbar were malicious and

duplicitous of the federal and state law claims pending in Civ. Action 22-4235"O"(1) and recommended dismissal without prejudice. ECF No. 18 at 28. As to Deputy Banks, the undersigned found that Sencial's § 1983 medical indifference and excessive force claims and state law claims of negligence and intentional infliction of emotional distress asserted against Deputy Banks, and related state law claims of *respondeat superior* liability against Sheriff Lopinto, relating to the September 1, 2022, incidents should be allowed to proceed. *Id*. at 29. The following findings were adopted by the District Judge via Order on May 9, 2024. ECF No. 20.[2]

### a. **Defendants' Motion for Summary Judgment (ECF No. 77)**

Defendants Deputy Jody Lee Banks and Sheriff Lopinto moved for summary judgment dismissal of Sencial's § 1983 medical indifference, excessive force, and related state law claims of negligence and intentional infliction of emotional distress asserted against Deputy Banks, and state law claims of *respondeat superior* liability against Sheriff Lopinto. ECF No. 77-1., ¶II at 4. Defendants state that they are entitled to summary judgment as Sencial failed to exhaust his administrative remedies. *Id*. at 1. Further, Defendants assert that Sencial failed to show that his right to be free from the use of excessive force was violated, that they are entitled to qualified immunity in their individual capacities, Sencial does not and cannot show that any alleged constitutional deprivation was pursuant to an official policy of the Sheriff's Office, and that Sencial's state law claims fail as a matter of law. ECF No. 77 at 1.

In the supporting memorandum, Defendants state that Sencial failed to exhaust the available administrative remedies before bringing his claims in court as required by 42 U.S.C. § 1997e. ECF No. 77-1, ¶IV(A), at 6. Defendants assert that it is uncontested that Sencial failed to

---

[2] Multiple other findings surrounding other remaining defendants and claims were addressed in the Report and Recommendation and adopted via Order by the District Judge. However, the facts and procedural history as outlined above only pertain to the claims still remaining against defendants Deputy Banks and Sheriff Lopinto at this stage of the proceedings.

affirmatively plead that he exhausted his administrative remedies and that he failed to appeal the rejection of his grievance. *Id.*, ¶IV(C), at 11. Further, Defendants state that Sencial's grievance on the subject is vague to the point of incredulity. *Id.*, ¶V, at 13.

In their statement of uncontested facts, Defendants state that JPCC has a grievance procedure in compliance with federal and Louisiana law. ECF No. 77-2 at 1. Defendants contend this procedure is a two-step process and is explained via the Inmate Handbook which is provided to those incarcerated within JPCC. To complete step one, the inmate files a grievance and the administration will give a response within 30 days of filing the grievance. For step two, upon receiving the response, the inmate may request review by the Correctional Administrator by filing a request for a grievance review within 5 days of receiving the response or within 5 days of the expiration of the 30-day time limit for a response. In support of these uncontested facts, Defendants provide a copy of JPCC's Inmate Grievance Procedure and the Inmate Handbook. *See* ECF No. 77-4, Exh. 1; ECF No. 77-5, Exh. 2. Further, Defendants contend that Sencial did not exhaust his administrative remedies and that his only report was rejected as vague because he did not state a date, time, or any other information concerning the event. ECF No. 77-2 at 2; *see also* ECF No. 77-6, Exh. 3 (Grievance). Finally, Defendants assert there is no documentation, medical or otherwise, of the complained event. ECF No. 77-2 at 2.

In his opposition to Defendants motion, Sencial states he submitted over 300 grievances and exhausted all remedies. ECF No. 84 at 1. Sencial also states that he exhausted as he had no avenue of filing grievances due to reprisal, intimidation, or fear. He asserts he was reprised against filing grievances by Deputy Banks, some grievances were altogether lost, and that he was attacked because Deputy Banks labeled him as a "rat." He claims the grievance he filed submitted by Defendants in their motion is informing facility officials that Deputy Banks was intimidating him which he states he timely appealed. Further, Sencial states that Defendants are not entitled to

qualified immunity as he was maliciously attacked and that Deputy Banks's intimidation prevented him from seeking medical care and contributed to his lasting injury. *Id*. at 2-3.

## II.    <u>Standard of Review for Summary Judgment</u>

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A fact is "material" if resolving that fact in favor of one party could affect the outcome of the suit.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Poole v. City of Shreveport*, 691 F.3d 624, 626-27 (5th Cir. 2012).

Where the moving party bears the burden of proof at trial as the plaintiff, or as a defendant asserting an affirmative defense, that party must support its motion with "credible evidence . . . that would entitle it to directed verdict if not controverted at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986).  Moreover, in evaluating a motion for summary judgment by the party with the underlying burden of proof, the Court considers the substantive evidentiary burden of proof that would apply at the trial on the merits.  *Anderson*, 477 U.S. at 252.  In such a case, the moving party must "establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor."  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original); *see also Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 378 (5th Cir. 2011).  Credible evidence may include depositions, documents, affidavits, stipulations, admissions, interrogatory answers, or other materials.  Fed. R. Civ. P. 56(c).

Once the moving party has made its showing, the burden shifts to the non-moving party to produce evidence that demonstrates the existence of a genuine issue of fact.  *Engstrom v. First Nat. Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995) (citing *Celotex*, 477 U.S. at 322-24). All justifiable inferences are to be drawn in the non-moving party's favor.  *Anderson*, 477 U.S. at 255.  However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation

are not sufficient to defeat a motion for Summary Judgment." *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003) (internal citations omitted); *see also Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996) (stating that "mere conclusory allegations" are insufficient to defeat a motion for summary judgment). Although the Court may not evaluate evidence on a motion for summary judgment, the Court may make a determination as to the "caliber or quantity" of evidence as part of its determination of whether sufficient evidence exists for the fact-finder to find for the non-moving party. *Anderson*, 477 U.S. at 254. "[T]his court construes 'all facts and inferences in the light most favorable to the nonmoving party.'" *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012) (quoting *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010)).

## III.   Discussion

### a.   Failure to Exhaust Administrative Remedies

Defendants moved for summary judgment because Sencial failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). ECF No. 77 at 1. Defendants contend that Sencial did not proceed to Step 2 of the grievance procedure as his only report was rejected as vague because he did not state a date, time, or any other information concerning the event with Sgt. Banks. ECF No. 77-2 at 2; *see also* ECF No. 77-6, Exh. 3 (Grievance).

Sencial contends that, based on the over 300 grievance reports he filed during his time at JPCC, that he exhausted all administrative remedies surrounding his claims. ECF No. 84 at 1. Sencial also states that he exhausted as he had no avenue of filing grievances due to reprisal, intimidation, or fear. He asserts he was reprised against filing grievances by Deputy Banks and that some grievances were altogether lost. Further, Sencial claims the grievance he filed submitted by Defendants in their motion was informing facility officials that Deputy Banks was intimidating him which he also states he timely appealed.

6

The Prison Litigation Reform Act of 1995 ("PLRA"), as amended, provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. *Clifford v. Gibbs*, 298 F.3d 328, 329 (5th Cir. 2002) (citing *Porter v. Nussle*, 534 U.S. 516 (2002)).

Exhaustion of administrative remedies is essentially a condition precedent to bringing suit. *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012). Administrative remedies are not exhausted unless a prisoner pursued his grievance through the conclusion of all steps of the administrative remedy procedure. *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001) (affirming dismissal of case where prisoner failed to "pursue the grievance remedy to conclusion."); *see also Hemphill v. Inglese*, 359 F. App'x 537, 540 (5th Cir. 2010) ("[C]omplying with the first step of an administrative grievance procedure will not suffice to exhaust administrative remedies if the grievance procedure contemplates additional steps."). "Pre-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted." *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012). Exhaustion is defined by the prison's administrative procedures, and courts cannot add to nor subtract from them. *Cantwell v. Sterling*, 788 F.3d 507, 509 (5th Cir. 2015) (per curiam) (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007) ("[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.")); *accord. Cowart v. Erwin*, 837 F.3d 444, 451 (5th Cir. 2016). It is "immaterial" that a prison's administrative procedure is not "user friendly"; "[a]ll available remedies must . . . be exhausted [and] those remedies need not meet federal standards[ ] nor . . . be plain, speedy, and effective."

*Marshall v. LeBlanc*, No. 18-13569, 2020 WL 8675896, at \*3 (quoting *Porter*, 534 U.S. at 532), *R.&R. adopted*, 2021 WL 780749 (E.D. La. Mar. 1, 2021).

The purposes of the exhaustion requirement are to "give an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court" and to allow for claim resolution in proceedings before an agency because it is faster and more economical than litigation in federal court. *Bisby v. Garza*, 342 F. App'x 969, 971 (5th Cir. 2009) (citing *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)). Thus, a grievance exhausts only claims reasonably within its scope. *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004) (grievance must provide administrators with a "fair opportunity under the circumstances to address the problem that will later form the basis of the suit").

The prisoner grievance system in Louisiana's prisons is "available" for purposes of the 42 U.S.C. § 1997e(a) exhaustion requirement. *Ferrington v. La. Dep't of Corrs.*, 315 F.3d 529, 531–32 (5th Cir. 2002). Louisiana's two-step prisoner grievance system is codified in Louisiana's Corrections Administrative Remedy Procedure (CARP), La. Rev. Stat. § 15:1711, *et seq.*, and in the administrative regulations of the Department of Public Safety and Corrections. *See* La. Admin. Code tit. 22, pt. I, § 325.

At the first step, the offender initiates the formal process by completing a request for administrative remedy or writing a letter to the warden, in which he briefly sets out the basis for his claim, providing as many facts as possible, and the relief sought. La. Admin. Code tit. 22, pt. I, § 325(G)(1). For purposes of this process, a letter is:

(a) any form of written communication which contains the phrase: "This is a request for administrative remedy" or "ARP", or

(b) request for administrative remedy (form OP-C-13-ARP-1) at those institutions that which to furnish forms for commencement of this process.

*Id.* at § 325(G)(1)(a)(i). This grievance is known as an "ARP." The grievance must be filed with the warden within ninety days of the alleged incident. *Id*. at § 325(G)(1). The grievance should "identify individuals who are connected with the problem" so as to "provide administrators with a fair opportunity" to address the problems that will form the basis of the suit. *Johnson*, 385 F.3d at 522. Pursuant to the procedure, the warden of the institution shall respond to the inmate within forty days from the date the request is received, which concludes the first step of the administrative process. *See* La. Admin. Code tit. 22, pt. I, § 325(J)(1)(a).

If the warden fails to respond or the offender is dissatisfied with the response, then he may proceed to the second step of the administrative process by appealing to the secretary of the Department of Public Safety and Corrections by indicating in the appropriate space on the response form and forwarding it to the ARP screening officer within five days of receipt of the decision. *Id*. at § 325(J)(1)(b)(i). The second step is concluded when a final decision is made by the secretary and the inmate is notified within forty-five days of receipt. *Id*. at § 325(J)(1)(b)(ii); La. Rev. Stat. § 15:1172(C).

Only after the completion of both steps, and each element thereof, may the inmate file suit in district court. *Woodford*, 548 U.S. at 84; La. Admin. Code tit. 22, pt. I, § 325(F)(3)(a)(viii). Furthermore, if the prisoner fails to initiate the grievance process or fails to proceed to the second step of the procedure, he has abandoned his claims and any subsequent suit should be dismissed with prejudice. La. Rev. Stat. § 15:1172(C); *see also Johnson v. Louisiana ex rel. Louisiana Dep't of Pub. Safety & Corr.,* 468 F.3d 278, 281 (5th Cir. 2006); *see Jones v. Bock,* 549 U.S. 199, 218 (2016) ("[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,'" as defined "by the prison grievance process itself.") (quoting *Woodford*, 548 U.S. at 88).

Defendants assert that JPCC has a grievance procedure "to provide plain, speedy and effective administrative remedies to inmate grievances in compliance with the Civil Rights of Institutionalized Persons Act (42 U.S.C. 1997 *et seq*) and the Correctional Administrative Remedy Procedure (La. R.S. 15:1171 *et seq*)." ECF No. 77-1 at 9-10; *See* 77-4 Exh. 1 (Inmate Grievance Procedure). Defendants claim this procedure is explained to inmates in a handbook, which is "provided to inmates incarcerated within the Jefferson Parish Correctional Center explaining a written set of guidelines describing behavior expected, and the type of discipline that can be imposed if the Rules, Regulations, & Procedures are not adhered to." ECF No. 77-1 at 10; *See* 77-5 Exh. 2 (Inmate Handbook).

As outlined in the written guidelines provided by Defendants, JPCC's grievance procedure is a two-step process. ECF No. 77-4 Exh. 1 at 2-4 (Inmate Grievance Procedure). For step one, the inmate files a grievance and the administration responds accordingly. "The employee assigned to respond to a filed grievance shall complete the investigation as necessary and deliver a response to the grievance (including the reasons for the decisions reached) to the Correctional Administrator or his designee, who will give 2 copies to the inmate filing the grievance within 30 days of the filing of the grievance." *Id*. at 4. Step two involves the inmate's appeal of the administration's response. "Upon receiving the response, the inmate may request review by the Correctional Administrator by filing a request for grievance review…[t]he request must be received by the Correctional Administrator or his designee within 5 days of the inmate's receipt of the response or if no response was timely received, within 5 days of the expiration of the 30 day time limit for a response." *Id*.

The inmate grievance procedure also outlines circumstances where a grievance may be rejected. The procedure states a grievance may be rejected for being outside the scope of the grievance procedure, if the grievance is speculative, the grievance is premature (concerning an

action not yet taken or decision not yet formulated), the grievance was received more than 30 days after the reported event, the grievance is a duplicate of another grievance filed by the inmate, if a grievance complains multiple complaints, and if the grievance does not contain a clear and brief explanation of the complained event. *Id*. at 3. The policy states that "any grievance rejected for the above reasons will be returned to the inmate with an appropriate explanation." *Id*.

Exhaustion is an "affirmative defense," so the defendant bears the burden of demonstrating the plaintiff "failed to exhaust available administrative remedies." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (citing *Jones*, 549 U.S. at 216). Defendants must establish "beyond peradventure all of the essential elements of the defense of exhaustion to warrant summary judgment in their favor." *Id.* (citing *Martin v. Alamo Cmty. Coll. Dist.*, 353 409, 412 (5th Cir. 2003)).

In support of their motion for summary judgment, Defendants provide what they contend is the only grievance filed by Sencial surrounding the incident with Deputy Banks that he filed on October 26, 2022. ECF No. 77-6, Exh. 3 (Grievance). The grievance indicates that it was rejected for being too vague, as Sencial does not specify what happened during the incident or when the incident happened. Given that the grievance was rejected, it did not proceed to Step 2 of JPCC's administrative remedy procedure, and any claims associated with the grievance would be unexhausted.

Sencial opposes the motion for summary judgment stating that his claims involving Deputy Banks were exhausted as evidenced by the grievances he submitted to the Court. Prior to the Court's frivolity review, the Court ordered Sencial to produce all the administrative grievances he filed in relation to his claims. ECF No. 11. In response, Sencial provided over 300 pages of grievances, requests for medical care, and various medical records involving his claims. ECF No. 12. The documents submitted by Sencial include October 26, 2022, grievance involving Deputy

Banks that Defendants provided in their motion for summary judgment that was unexhausted. ECF No. 12-3 at 23.

After reviewing all the documents submitted by Sencial, the Court found two other grievances that Sencial filed that mention Deputy Banks. In the first, filed on October 21, 2022, Sencial states that Deputy Banks deters inmates from filing grievances and has harassed him on several occasions. *Id*. at 25. Further, Sencial states Deputy Banks yelled at him and that, in a prior interaction, Deputy Banks dragged him through a hallway. The grievance was rejected as it was too vague and contained multiple complaints filed into the same grievance.

The Court located a second additional grievance mentioning Deputy Banks filed by Sencial on October 26, 2022. *Id*. at 27. In this grievance, Sencial states that Banks personally punished him for filing sick calls. Sencial also writes about multiple other individuals regarding the denial of medical care by prison healthcare officials. This grievance was also rejected for containing multiple complaints filed into the same grievance. Similar to the grievance submitted by Defendants, the record demonstrates that none of the claims involving Deputy Banks in these two additional grievances were exhausted either as both were rejected and did not proceed to Step 2.

In addition to opposing Defendants' motion on the grounds that all his claims were exhausted.  Sencial also states that he exhausted his claims as he had no avenue of filing grievances due to reprisal, intimidation, or fear, and asserts he was reprised against filing grievances by Deputy Banks.

Courts should "not read futility or other exception into statutory exhaustion requirements" where none exist. *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). But the PLRA does contain one textual exception to its otherwise strict exhaustion requirement: "availability." *Valentine v. Collier*, 978 F.3d 154, 160 (5th Cir. 2020).  Prisoners "who fail to exhaust can proceed in court by showing that administrative remedies were not 'available,'" meaning "capable of use to obtain

some relief for the action complained of." *Id.* (internal quotation marks omitted) (quoting *Ross v. Blake*, 578 U.S. 632, 642 (2016) (quoting *Booth*, 532 U.S. at 738)).  In *Ross v. Blake*, the Supreme Court described three circumstances when an administrative remedy is not available: (1) when the procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," (2) when the procedure is "so opaque that it becomes, practically speaking, incapable of use," or (3) when "prison administrators thwart [prisoners] from taking advantage of [the procedure] through machination, misrepresentation, or intimidation." *See* 578 U.S. at 643-44; *accord. Valentine*, 978 F.3d at 160-61.

Sencial states that the administrative remedy procedure was unavailable to him due to intimidation by Deputy Banks. He claims that prison officials were aware of this based on the grievances he filed surrounding Deputy Banks's conduct.

In *Zebrowski v. U.S. Federal Bureau of Prisons*, the plaintiff argued that he should be excused from exhausting his administrative remedies because such remedies were unavailable to him due to interference by prison officials with the grievance process and threats by one of the defendants, an officer named Hooks. 558 F. App'x 355, 360 (5th Cir. 2014). The Fifth Circuit held that the allegations of interference were not sufficient to excuse the exhaustion requirement and stated "even assuming that Hooks did threaten Zebrowski as Zebrowski alleged, this does not constitute one of the rare instances in which exhaustion is excused." *Id*. (citing *Gonzalez v. Seal*, 702 F.3d 785, 787-88 (5th Cir. 2012); *Woods v. Hirsch*, 461 F. App'x 365, 365 (5th Cir. 2011) (per curiam)).

Additionally, instances where a plaintiff successfully filed multiple grievances and received responses for those grievances despite alleged intimidation has resulted in a finding that the grievance procedure was available to them. *Shafer v. Collier*, No. 19-114, 2021 WL 4077374, at *8 (E.D. Tex. Apr. 19, 2021) (concluding that despite any threats plaintiff may have received,

13

plaintiff's filing of a substantial number of grievances during the relevant time period and thereafter was evidence that the grievance procedure was not unavailable to him nor was plaintiff dissuaded or intimidated from filing grievances) *R.&R. adopted*, 2021 WL 3749034 (E.D. Tex. Aug. 25, 2021).

In *Williams v. Bexar County*, the Fifth Circuit held that the district court did not err in granting summary judgment in favor of the defendant for failure to exhaust when the plaintiff successfully utilized the grievance procedure 13 times during the alleged window of unavailability. No. 22-50289, 2024 WL 3326082, at *8 (5th. Cir. July 8, 2024). The Court concluded that the plaintiff "did not provide the district court any evidence, outside of his conclusional statements, to show that he was prevented from filing grievances" about the defendants and, therefore, did not make a showing that the grievance process was unavailable to him. *Id*. (citing *Duffie v. United States*, 600 F.3d 362, 371 (5th. Cir. 2010); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) ("Mere conclusory allegations are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment.")).

Sencial claims that the grievance procedure was unavailable to him and that he should be excused from his failure to exhaust given that Deputy Banks intimidated him from filing grievances as well as seeking medical care for his alleged injuries. However, as discussed, Sencial filed at least three grievances mentioning Deputy Banks that were rejected at Step 1 for various procedural reasons. Further, the alleged events involving Deputy Banks occurred on September 1, 2022, and September 21, 2022. The record indicates that Sencial filed at least 11 grievances or requests for medical care between September 7, 2022, and October 17, 2022, prior to submitting the first grievance mentioning Deputy Banks on October 21, 2022.[3] Further, the record indicates

---

[3] ECF No. 12-2 at 21; ECF No. 12-3 at 13, 15, 17, 19, 21; ECF No. 12-5 at 20, 22, 52, 68, 87; ECF No. 12-3 at 25.

that Sencial filed at least 71 grievances during his time at JPCC. ECF No. 12. As evidenced by the numerous amounts of grievances filed, Sencial was not intimidated or dissuaded from utilizing the grievance procedure and cannot meet the burden that the grievance procedure was unavailable to him for purposes of exhausting his claims involving Deputy Banks.

Defendants' unrebutted evidence establishes that Sencial failed to pursue his administrative remedies to competition prior to filing suit. Therefore, Sencial failed to exhaust his administrative remedies as required by federal law and Deputy Banks is entitled to summary judgment on these unexhausted claims.

Failure to exhaust administrative remedies generally results in a dismissal "without prejudice." *Dawson Farms, LLC v. Farm Serv. Agency*, 504 F.3d 592, 607 (5th Cir. 2007) (citing *Taylor v. U.S. Treasury Dep't*, 127 F.3d 470, 478 & n.8 (5th Cir. 1997)). When, however, exhaustion is no longer possible, dismissal with prejudice is warranted. *Id.* (citing *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002) ("Dismissal for failure to exhaust is without prejudice and so does not bar the reinstatement of the suit unless it is too late to exhaust."); *Marsh v. Jones*, 53 F.3d 707, 710 (5th Cir. 1995)); *accord. Donahue*, 824 F. App'x at 267 (quoting *Dawson*, 504 F.3d at 607) (Section 1997e context).

The incidents involving Deputy Banks allegedly occurred in September 2022. Considering JPCC Grievance Procedure's 30-day filing deadline, it is too late for Sencial to exhaust now. Thus, Sencial's remaining § 1983 medical indifference and excessive force claims involving Deputy Banks must be dismissed with prejudice as unexhausted.

### b. <u>State Law Claims</u>

Sencial also asserts state law claims of negligence and intentional infliction of emotional distress against Deputy Banks and state law claims of *respondeat superior* liability against Sheriff Lopinto. The exhaustion requirement under the PLRA at Section 1997e(a), however, is directed

only to "prison conditions under section 1983 of this title, or any other Federal law" and does not apply to Sencial's remaining state law claims.

Pursuant to 28 U.S.C. § 1367(a), in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  This jurisdiction is "a doctrine of discretion," and in so deciding, courts consider "judicial economy, convenience and fairness to litigants," as well as whether "the state issues substantially predominate." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726-27 (1966).  Ultimately, "[a] district court has 'wide discretion' in deciding whether it should retain jurisdiction over state law claims once all federal claims have been eliminated." *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 161 (5th Cir. 2011) (citing *Guzzino v. Felterman*, 191 F.3d 588, 595 (5th Cir. 1999)).

The Fifth Circuit recognizes that its "general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed." *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992) (citing *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989)); *see Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 351 (1988) (when the federal claims are eliminated at an "early stage" of the litigation the district court has "a powerful reason to choose not to continue to exercise jurisdiction"); *Gibbs*, 383 U.S. at 726 ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

For the reasons outlined above, all of Sencial's § 1983 claims involving Deputy Banks may be dismissed with prejudice as unexhausted. Under the provisions of § 1367(c), and balancing the relevant factors of judicial economy, convenience, fairness and comity, the Court declines to exercise supplemental jurisdiction and dismisses without prejudice Sencial's state law claims of

negligence and intentional infliction of emotional distress against Deputy Banks and state law claims of *respondeat superior* liability against Sheriff Lopinto.

Accordingly,

**IT IS ORDERED** that defendants Deputy Jody Lee Banks and Sheriff Joseph Lopinto III's **Motion for Summary Judgment (ECF No. 77)** is **GRANTED** and that Sencial's § 1983 excessive force and medical indifference claims against Deputy Banks are **DISMISSED WITH PREJUDICE** as unexhausted.

**IT IS FURTHER ORDERED** that Sencial's related law claims of negligence and intentional infliction of emotional distress against Deputy Banks and state law claims of *respondeat superior* liability against Sheriff Lopinto are **DISMISSED WITHOUT PREJUDICE** because the Court declines to exercise supplemental jurisdiction.

New Orleans, Louisiana, this 14th day of April, 2026.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

17